In re **JOHNS–MANVILLE CORPORATION**, et al., Debtors.

**JOHNS–MANVILLE CORPORATION**, et al., Plaintiffs,

v.

The **ASBESTOS LITIGATION GROUP**, et al., Defendants.

Nos. 83 Civ. 3212–CLB, 83 Civ. 4263–CLB and 83 Civ. 5018–CLB.

United States District Court, S.D. New York.

Jan. 9, 1984.

Lowell G. Harriss, Karen Wagner, Davis, Polk & Wardwell, Susan Johnston, Herbert Edelman, Levin, Weintraub & Crames, New York City, for Johns-Manville Corp.

C. MacNeil Mitchell, Breed, Abbott & Morgan, New York City, for appellant Lake Asbestos of Quebec, Ltd.

Anthony Marchetta, Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney, Newark, N.J., for appellant GAF Corp.

John J. Jerome, Frank S. Plimpton, Milbank, Tweed, Hadley & McCloy, New York City, for Committee of Unsecured Creditors of Johns-Manville Corp., intervenor.

Ira Sacks, Edward Weisfelner, Kaye, Scholer, Fierman, Hays & Handler, New York City, for Travelers Indemnity Company, intervenor.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Three separate appeals from decisions and orders of the Honorable Burton Lifland, Bankruptcy Judge, are before this Court for determination. They arise out of the proceedings pursuant to Chapter 11 of the Bankruptcy Code, initiated by Johns-Manville Corporation ("Manville"). Since these are related matters, we consider them together.

After more than a century of use of asbestos containing products, in residences, schools, ships, automobiles, factories, and in a vast number of applications, it was suddenly discovered that asbestos is dangerous and that inhalation of the dust is carcinogenic and debilitating. A litigation explosion ensued with a vast number of cases brought by persons claiming injury in plants where the product was used, or otherwise. The financial threat and the disruption of its business flowing from the litigation caused the Debtor Manville, a large manufacturer of asbestos, to seek the protection of the Bankruptcy Court in this district, which it did on August 26, 1982, treating those claiming to have been injured as its contingent creditors in the amounts set forth in their pleadings, making a total of claims in excess of Two Billion Dollars, more than the net worth of the Debtor.

### I

As of 1982, appellant Lac D'Amiante du Quebec, Ltee. (hereinafter "Lake") was an original or impleaded defendant in several hundred asbestos-related tort cases pending in various jurisdictions throughout the United States. Manville was also a defendant in many of these suits. Among the proceedings against Manville which were stayed under the Bankruptcy Code following the filing of its Chapter 11 proceedings on August 26, 1982 are approximately 80 cases (the "plantworker cases") pending in

New Jersey relating to claims arising from exposure to asbestos suffered at a Manville plant located at Manville, New Jersey. Lake is one of Manville's co-defendants in these cases.[1] In September 1982 the United States District Court, District of New Jersey, severed the direct claims and cross-claims against Manville in the Manville plantworker cases. While that Court subsequently ordered that the plantworker cases proceed to trial in early 1983, the trials were stayed by the Court of Appeals for the Third Circuit pending determination of a petition brought in that Court by one of Lake's co-defendants.

In November 1982 Lake applied for an order clarifying the extent of the stays issued by the Bankruptcy Court pursuant to §§ 105 and 362 of the Bankruptcy Code. Lake sought a ruling from Judge Lifland that neither the statutory stay nor the accompanying stay order issued by the Bankruptcy Court prohibit it from obtaining pretrial discovery of documents and by deposition, as well as trial testimony from Manville, for its own use in those suits from which Manville has been severed. Also in November 1982, Manville initiated an adversary proceeding in Bankruptcy Court seeking, among other things, to enjoin various co-defendants, including Lake, in pending asbestos lawsuits throughout the country, from seeking discovery against and trial testimony from Manville's past and present officers, directors and employees. Lake subsequently moved to dismiss Manville's complaint insofar as it sought to enjoin discovery. In December 1982 Lake joined in a motion for partial summary judgment made by another co-defendant to dismiss the counts of Manville's complaint in the Bankruptcy Court which sought to enjoin discovery against Manville and its employees.

On January 10, 1983 Judge Lifland issued two decisions determining the Lake application, the Manville proceeding, and

---

1. Similarly, Lake is a co-defendant in another case pending before the United States District Court in New Jersey, *Richard Evans, et al. v. Johns-Manville, et al.*, Civil Action No. 80–1201,

and the discovery and trial testimony which Lake seeks for use in the plantworker cases (see p. 221 ff., *infra*) is sought for this action as well.

several additional consolidated proceedings involving interpretation of the stay and the stay order. Decision No. 1 denied motions made by co-defendants in the pending asbestos litigation to have the § 362 stay extended to them or, alternatively, modify the stay to permit pending litigation to proceed through discovery to trial, but without entry of judgment against Manville. 26 B.R. 405 (Bkrtcy.). Decision No. 2 was designated by Judge Lifland as "Omnibus Decision on the Various Proceedings, Motions and Cross-Motions Brought Regarding Whether the Automatic Stay Applied to Manville's Employees, Agents and Other Related Entities." 26 B.R. 420 (Bankr.S.D.N.Y.1983). In this decision, from which appellant's present appeal is taken, Judge Lifland held, in part, that co-defendant Keene's motion, in which Lake had joined, for partial summary judgment dismissing portions of Manville's complaint, was denied, and that the stay against those Manville employees named parties in the litigation and whose continuing efforts were vital to plan and carry out Manville's reorganization were covered by the stay. In addition, the Court held that the stay operated to protect Manville's current non-party employees, 26 B.R. at 424, 434. With regard to Lake's request for clarification of the automatic stays, the court elected to treat Lake's request for discovery from Manville's non-party employees "for all practical purposes" as a "request for modification of the Section 362 stay." 26 B.R. at 424. The court then held that "[t]o a large extent, the relief requested by Lake and Occidental is disposed of in the accompanying decision on the co-defendants' stay extension proceedings." *Id.* In the accompanying decision, Decision No. 1, *supra,* the Court refused at that time to modify the stay so as to permit the asbestos lawsuits to proceed on the merits through verdict but not to the point of judgment against Manville. On April 15, 1983, Judge Lifland entered an order

pursuant to Decision No. 2 which provided, in part, that:

"Apart from discovery authorized by this Court pursuant to [the Bankruptcy Rules], all entities are hereby stayed, restrained and enjoined from commencing and conducting discovery proceedings against or directed to any current Employees, Agents and others who have not been named in their individual capacity as a party to a suit." Court Order on Decision No. 2—April 15, 1983, p. 5.

Prior to the entry of Judge Lifland's supplemental order, Lake joined, on January 26, 1983, in a motion for reargument of the court's ruling that § 362 precludes the discovery and trial testimony which Lake had requested from Manville. Reargument was granted, and at a hearing held February 25, 1983, Judge Lifland reaffirmed his determination that the stay extends to Lake's proposed discovery, and held that none of the co-defendants had demonstrated sufficient cause to lift the stay. Familiarity is assumed with all of the foregoing proceedings below.

Appellants[2] contend that the automatic stay provision of § 362 simply does not apply to the testimony or discovery sought here. They argue that since they do not seek discovery or other trial participation by Manville as a party opponent (the claims against Manville in the Manville plantworker cases having been severed), discovery from its employees as non-party witnesses cannot be construed as "proceedings against the debtor" which are subject to stay by § 362. Stressing that in enacting the Bankruptcy Reform Act Congress intended to broaden protection for the Debtor against any and all actions and proceedings brought by creditors or other parties, Manville counters that § 362 does indeed apply *automatically* to stay discovery and trial testimony from the Debtor, including that which may be sought from his current employees. Manville cites a number of cases in support of its conten-

---

**2.** Appellant GAF Corporation in 83 Civ. 4263, *infra,* also appeals on this issue, and has relied on the arguments made by Lake Asbestos.

tion that the automatic stay was intended to have sufficient breadth to stay discovery of the debtor, its records and employees in all cases. However, as Lake correctly notes in its reply brief, the cases so cited involved situations in which the discovery sought arose in a proceeding against the debtor. (*E.g., In re Penn-Dixie Industries, Inc.*, 6 B.R. 832 Bkrtcy. S.D.N.Y. 1980). In that situation, it would be anomalous indeed if burdensome and expensive pre-trial discovery were allowed to proceed when trial of the same action for which the discovery is sought has been stayed. The stay of discovery in such a situation does not govern a case like the instant one, where Lake does not seek discovery to prosecute any claim against Manville, but seeks it to defend itself from liability to third parties.

In support of its contention that § 362 does not automatically ban a discovery request such as the one made here, Lake cites, *inter alia, Teledyne Industries, Inc. v. Eon Corp.*, 373 F.Supp. 191 (S.D.N.Y. 1974). In *Teledyne*, plaintiff brought suit against a corporation and several of its directors in their individual capacities. The defendant corporation filed for bankruptcy under the then applicable Bankruptcy Act of 1898, and an order staying further action against the corporation was issued pursuant to § 314 of the Act. Electing to sever and continue its lawsuit against the bankrupt's directors, plaintiff in *Teledyne* moved to compel discovery of the corporation. The court ruled that the bankruptcy stay was not applicable to discovery of a debtor as a non-party witness:

"[T]he individual defendants ... argue that the order of the bankruptcy court staying all actions against Eon [the corporate debtor] forbids the production of the documents in question .... The purpose of the stay is to prevent interference with, or diminution of, the debtor's property during the pendency of the Chapter XI proceeding. It is intended to prevent a creditor from defeating the jurisdiction of the bankruptcy court over the debtor's property by instituting another action in a different forum. It is

obvious, I submit, that none of these purposes would be defeated by requiring Eon to submit copies of the documents requested by plaintiff." 373 F.Supp. at 203.

While *Teledyne* thus supports Lake's position, *Teledyne* should *not* be read as indicating that discovery requests against the bankrupt will invariably be granted. In fact, *Teledyne* suggests that such requests should be upheld *only* when such discovery will not interfere significantly with the Debtor's reorganization efforts. In the passage just quoted, the court noted that allowing discovery against the debtor would not defeat any of the purposes of the stay. The court held that so long as the debtor's property is protected, there was "no obstacle to requiring this *limited participation* of [the bankrupt] here." *Id.* (Emphasis added). Similarly, in *Paden v. Union for Experimenting Colleges and Universities*, 7 B.R. 289 (D.C.N.D.Ill.1980), another of the cases referred to by Lake, the court permitted discovery to proceed against the debtor in a civil rights case after finding that this would not interfere with pending bankruptcy proceedings.

In contrast, the extensive contemplated pre-trial discovery and trial testimony in this case would certainly have a serious adverse impact upon Manville's reorganization proceedings. Appellant's brief, in outlining the nature of the discovery which will be undertaken if the decision of the court below is reversed, gives some indication of the extensive participation by Manville that is sought. Lake seeks document and deposition discovery, as well as eventual trial testimony, pertaining to the sources of supplies of asbestos to the Manville, New Jersey plant over a large time period. In addition, Lake seeks, for the purpose of establishing defenses to liability, discovery of the "knowledge and conduct of Manville during the relevant time period" with regard to asbestos use and the threat of asbestos-related disease. In *Teledyne*, by contrast, the requested discovery was limited to the production of documents.

In his second decision issued on January 10th, Judge Lifland assessed the probable effects of participation by Manville employees in the discovery process. While stated in the context of addressing the request for discovery against Manville employee-defendants, the Court's description of the effects discovery participation would have on the reorganization process is applicable to the instant requests for discovery against *non-party employees* as well:

"If the individual defendants were required to respond fully to these discovery demands, Manville would have to divert personnel from its financial, legal, and insurance departments, as well as secretaries, paralegals, and others.

\* \* \* \* \* \*

Moreover, all of the directors, including the Chairman of Manville's Board, would have to invest substantial time in fashioning their responses, particularly to those interrogatories dealing with their background and knowledge and to those document requests seeking information from their files.

\* \* \* \* \* \*

Manville faces more pressing obligations in the bankruptcy proceedings which have commanded and will continue to command the attention of its officers, directors, counsel, financial analysts and administrative personnel." 26 B.R. at 429–30.

There can be little doubt that permitting the discovery and trial testimony sought by Lake against Manville's non-party employees would also seriously interfere with the ongoing Chapter 11 proceedings. Certainly the finding of the Bankruptcy Judge to that effect is not clearly erroneous.

Moreover, as Manville notes, to permit discovery to proceed in this instance would open the door to additional requests of this nature from similarly situated defendants in literally thousands of other pending asbestos-related cases and cases yet unfiled. The cumulative effect of this on the reorganization can well be understood.

In considering the effect of extensive and expensive pre-trial discovery taken from a debtor in reorganization, or from its present or past officers and employees, the Court must be mindful of the realities of modern litigation. Pre-trial discovery under modern federal practice has become a monster on the loose. It is no longer a simple question of inspecting documents or producing a witness under oath who may simply be directed by Debtor's counsel to tell the truth and then testify. Pre-trial proceedings have become more costly and important than trials themselves. It is customary today for the lawyers for a witness or party subject to deposition testimony, to meet with the witness prior to depositions and interview the witness in depth. This is done in order to refresh the witness' recollection, prepare the witness to listen carefully to questions and assure that the witness will not engage in surmise or speculation and give unfounded answers which later pass as an admission against interest. Witness preparation also extends to making sure that attorney-client privileged matter, or trade secrets are not inadvertently loosed to the world.

In typical product liability litigation, such defense lawyering, although expensive and burdensome, is considered absolutely necessary as a part of the litigation process. When the milk is spilled on the ground because of badly defended pre-trial discovery, it cannot readily be put back in the bottle. While it is obviously improper to obfuscate, or suborn perjury in preparation for a deposition in a civil lawsuit, it is certainly customary and proper to spend some time in preparation with the witness to make certain that the witness understands his obligations to testify solely as to matters of his own knowledge which are not privileged and to refrain from surmise or speculation or guesswork.

Lake has offered in this case to waive any right it might have to use its requested discovery in any subsequent proceeding against Manville. (Tr. of Bankr. hearing on Lake application, Dec. 1, 1982, p. 10). This is an impractical and illusory concession. Only Lake would be bound thereby.

Furthermore, once a witness has testified to a fact, or what sounds like a fact, that witness may be confronted with his prior testimony under oath in a future proceeding directly involving Manville, whether or not Manville was a party to the record on which the initial testimony was taken. Once an admission against interest is made, under oath or otherwise, by the agent of a party, that admission stands for all time. No matter what Lake may stipulate, the thousands of other claimants and cross-claimants who are after Manville's assets, would be entitled to use the product of such discovery.

This Court recognizes, as does the Bankruptcy Court, that stays of proceedings of the sort present here, are not intended to be permanent. They must be reasonable as to scope and duration. Eventually, as a part of some plan of reorganization, and by some judicial process, either in this Court or in the Bankruptcy Court, or in the many state and federal courts where asbestos related cases are now pending, the liability of the Debtor's estate to respond to these claims and cross-claims must be adjudicated in accordance with due process, as must be its obligations for indemnification or contribution to other possible joint tortfeasors. Thereafter, whatever Manville owes, it must pay, either as part of its plan of reorganization pursuant to Chapter 11 of the Code, or as a disposition of its assets to claimants in order of their priority pursuant to Chapter 7 of the Code, or as a judgment debtor if these proceedings be dismissed.

Notwithstanding any impressions to the contrary, neither the reorganization proceedings nor the stay can last forever.

At least as of the present, which is the only time as of which this Court may speak, the determination of the Bankruptcy Court to continue the stay is entirely reasonable, and absolutely necessary if there shall be any hope of reorganizing the Debtor in accordance with the statutory goal. Manville cannot be reorganized while its management is chasing around the country preparing for pre-trial discovery and protecting its legitimate interests in the scope and conduct of deposition testimony. To suggest otherwise, as noted above, would be to ignore the realities of modern litigation.

In light of the statutory purpose of the stay in bankruptcy, which "does more than prevent claims against the assets of the debtor," but gives "the debtor a breathing period in which to organize his or her affairs," *In re Delisi Fruit Co.*, 11 B.R. 694, 696 (Bkrtcy.D.Minn.1981), the court below was fully justified in protecting the debtor for a reasonable time from the attempts to remove the stay.

In upholding Judge Lifland's determination on the stay issue, the Court need not decide where § 362 automatically stays all discovery of the Debtor and its employees in all instances. The stay which went into effect upon the filing of Manville's Chapter 11 petitions was issued both under § 362 (the "automatic" stay) and pursuant to 11 U.S.C. § 105(a) of the Code (the All Writs statute), which authorizes the Bankruptcy Court to "issue any order, process or judgment that is *necessary or appropriate* to carry out the provisions of this title." (Emphasis added). While § 105 vests the Bankruptcy Court with the authority to extend the stay, such an extension must be in aid of authority exercised by the court pursuant to some other provision of the Code, in this case, § 362. In order to issue a stay under § 105, the court must determine that such relief is at least appropriate to achieve the goals of a Chapter 11 reorganization, and is necessary to protect the debtor.

The Bankruptcy Judge in the instant case has determined, in an appropriate exercise of his discretion under this section, to deny the request to allow discovery to proceed against Manville employees at this time. It is clear that irrespective of whether § 362 automatically bars such discovery, the Bankruptcy Court may prevent it under § 105. That this is true is clear from the fact that even if discovery requests were specifically excepted from the § 362 automatic stay, as several other types of ac-

tions are under § 362(b), they could still be enjoined pursuant to the Court's broader authority under § 105:

"[T]he exceptions to the automatic stay of § 362(a) which are set forth in § 362(b) are simply exceptions to the stay which protect the estate automatically at the commencement of the case and are not limitations upon the jurisdiction of the bankruptcy court or upon its power to enjoin. That power is generally based upon § 105 of the Code. *The court will have ample power to enjoin actions excepted from the automatic stay which might interfere in the rehabilitative process whether in a liquidation or in a reorganization case.*" 2 Collier on Bankruptcy ¶ 362.05 (15 ed. 1982) (Emphasis added) (cited with approval, *In re Johns-Manville Corp.*, 26 B.R. at 425).

■ In the exercise of its authority under § 105, the Bankruptcy Court may use its injunctive authority to "protect the integrity of a bankrupt's estate and the Bankruptcy Court's custody thereof and to preserve to that Court the ability to exercise the authority delegated to it by Congress." *In re Northern Boneless Meat Corp.*, 9 B.R. 27, 29 (D.C.S.D.N.Y.1981). Pursuant to the exercise of that authority the Court may issue or extend stays to enjoin a variety of proceedings which will have an adverse impact on the Debtor's ability to formulate a Chapter 11 plan. See, *e.g.*, *State of Missouri v. United States Bankruptcy Court*, 647 F.2d 768 (8th Cir.1981); *Securities and Exchange Commission v. First Financial Group of Texas*, 645 F.2d 429 (5th Cir.1981). Regardless of whether the discovery and trial testimony sought by Lake are automatically stayed under § 362, the Bankruptcy Judge was entitled, by means of his independent stay order issued pursuant to § 105, to determine that discovery proceedings against Manville would frustrate the bankruptcy proceedings and should therefore by stayed for a reasonable period.

## II

Shortly after taking its appeal from Decision No. 2, Lake, while not abandoning its position that the automatic stay is not applicable to the discovery it has requested, commenced a proceeding for relief from the stay pursuant to § 362(d). Following a rehearing on Manville's motion to dismiss Lake's request for modification of the stay, held on May 12, 1983, Judge Lifland dismissed Lake's complaint by order entered May 23, 1983.

■ Judge Lifland's dismissal of Lake's motion, which may be overturned only upon a clear showing of abuse of discretion [*Matter of Holtkamp*, 669 F.2d 505 (7th Cir.1982)], was founded upon his determination that the same relief had been denied previously to Lake and other co-defendants in Decisions No. 1 and No. 2, and his statement that his prior decision had established the "law of the case" requiring denial of Lake's further attempt to obtain relief from the stay.

■ The rule of "law of the case" is a discretionary one which "does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided." *Slotkin v. Citizens Cas. Co. of New York*, 614 F.2d 301, 312 (2d Cir.1979), *cert. denied sub nom. American Mutual Ins. Co. v. Slotkin*, 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980). Therefore, in determining whether Judge Lifland clearly erred in ruling that Lake's request for relief was precluded by "law of the case," we must consider not only whether Lake's request for relief from the stay had been addressed and determined previously, but also whether it was then appropriate to adhere to such prior determination if made. As noted in reviewing Judge Lifland's decisions in Lake's appeal, Lake initiated or joined several motions pertaining to the nature and extent of the stays issued by the Bankruptcy Court, and their applicability to discovery sought by Lake and other parties from Manville. (See text *supra*, p. 221). In Decision No. 2, in which the Bankruptcy Court consolidated various proceedings and

motions relating to the extent of the bankruptcy stay, Judge Lifland treated Lake's request for clarification of the stay as a "request for modification of the Section 362 stay." The court then denied Lake's request, finding that the relief requested was covered by Decision No. 1, in which the court denied various requests to modify the stay against Manville.

In ruling that Lake's subsequent request for relief from the stay was precluded by "law of the case" and that Manville's request to dismiss Lake's request for discovery should be granted, Judge Lifland stated:

> "The complaint is basically revisiting the issues that were already determined in Decisions 1 and 2. It's clear that those decisions were broad and established a law in the case, and that the one new or purportedly new factual issue is not really a new factual issue; it's covered by Decisions 1 and 2.
>
> \*    \*    \*    \*    \*    \*
>
> So that the law in this case has been established and has been repeatedly challenged by Lake. It pursued its appellate remedies appropriately and indeed it participated in the motion for summary judgment which was decided with all of the broad facts laid out for the Court.
>
> \*    \*    \*    \*    \*    \*
>
> There is no compelling reason for this Court to change its adherence to the prior broad decisions which specifically or in general encompass the issues that are before the court .... The law in the case is established, and absent an appellate reversal, the complaint does not state a cause of action based on the law of the case." (Tr. on Motion to Dismiss, pp. 17–20).

In considering whether the court's decision that Lake's latest request for relief from the stay is barred by the preclusive effect of the "law of the case" established in its previous decisions, we must keep in mind that the "doctrine of the law of the case comes into play only with respect to issues previously determined,"

*Quern v. Jordan,* 440 U.S. 332, 347, n. 18, 99 S.Ct. 1139, 1148, n. 18, 59 L.Ed.2d 358 (1979), and that a prior decision's preclusive effect may be quite limited when addressed to the bankruptcy court's equitable powers. *In re Teletronics Services Inc.,* 18 B.R. 705 (D.C.E.D.N.Y.1982). In *Teletronics* the party requesting dismissal of the counterclaim in an adversary proceeding sought to assert as *res judicata* the dismissal of an original action seeking relief on somewhat different legal theories. The court refused to regard the earlier decision as controlling the counterclaim:

> "[T]he [bankruptcy] court erred in extending to the instant controversy the preclusive effect of Judge Knapp's dismissal of TSI's original action. Although the dismissal resulted in final judgment on the merits, the judgment cannot have collateral estoppel effect on the instant counterclaim because the only 'matters in issue ... upon the determination of which the [judgment] was rendered, pertain to the validity of TSI's claims under federal securities and bankruptcy law. The matters underlying a bankruptcy court's equitable inquiry into a secured creditor's rights go far beyond the issues actually adjudged .... In sum, the sole collateral estoppel effect of the original judgment is to preclude relitigation of the only issue actually adjudicated." *Id.* at 706. (Citations omitted).

In urging a reversal of the Bankruptcy Court's dismissal of its motion for modification of the automatic stay, Lake argues that the relief it sought in the instant motion is different from that sought in Decision No. 2, in that while formerly, Lake had sought to take "general" depositions of certain Manville employees, it now seeks only to obtain certain documents already prepared by Manville's trial counsel, and would limit testimony of Manville employees to the identification and explanation of those documents. (Brief of Appellant, pp. 18–19).

While this Court is aware of the limited effect of "law of the case" in precluding Lake's assertion of future requests for re-

lief from the automatic stay (see discussion, *infra*), this Court cannot find the Bankruptcy Court's determination that Lake's latest request is merely a "revisitation" of its earlier motions pertaining to the stay, was clearly erroneous when made. Significantly, the Bankruptcy Court found that Lake had raised no new issues of fact in its latest request for relief from the stay (see Tr. on Motion to Dismiss at p. 17), and therefore the court's assessment of the deleterious effects of the discovery contemplated by Lake on the reorganization process (see *supra*, p. 224) would be equally applicable to Lake's latest request.

To the extent, however, that the Bankruptcy Court's sweeping articulation of the "law of the case" (see passages quoted *supra*) may be read as having a strongly preclusive effect on future attempts by Lake to seek modification of the § 362 stay based on changed circumstances, lapse of time, or both, we should note that a court with continuing jurisdiction over a case is not prevented by the law of the case from reconsidering, at an appropriate moment, its earlier decision. *Oppel v. Empire Mutual Insurance Co.*, 92 F.R D. 494, 496 (S.D.N.Y.1981). This is particularly true where, as in this case, the denial of relief from the stay is analogous to the continuation of a preliminary injunction, see *Foust v. Munson S.S. Lines*, 299 U.S. 77, 57 S.Ct. 90, 81 L.Ed. 49 (1936), and therefore lacks

the requisite finality for a strong preclusive *res judicata* effect. *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 742 (2d Cir.1953).

There may well be a time in the future when the Bankruptcy Court will determine that Lake has adequately demonstrated cause for complete or partial relief from the automatic stay and that such relief will not then have an adverse effect on the reorganization proceeding. This Court today does no more than affirm Judge Lifland's determination that where Lake has previously requested relief from the automatic stay imposed by the Bankruptcy Court, it should not be permitted, absent a showing of changed circumstances or a change in the scope of relief requested, to argue this issue yet again. See *Zdanok v. Glidden Company*, 327 F.2d 944 (2d Cir. 1964).[3]

### III

Appellant in 83 Civ. 4263, GAF Corporation, contests the rulings of the Bankruptcy Court in two respects.[4] The first concerns whether the court erred in prohibiting discovery of the Debtor's current employees and corporate officials as non-party witnesses in proceedings to which the Debtor is no longer a party. As noted above (see fn. 2), GAF has relied on the arguments made on that issue by Lake

**3.** Appellant contends that Manville did not sustain its burden, under § 362(g) of the Code, of proving that Lake's most recent application for relief from the stay should be summarily dismissed. This Court does not take issue with Lake's contention that in general a debtor opposing application for relief from the automatic stay has the same burden as a party seeking to obtain a preliminary injunction in other contexts. See *Foust v. Munson S.S. Lines*, 299 U.S. 77, 84–85, 57 S.Ct. 90, 94, 81 L.Ed. 49 (1936); *In re Otero Mills*, 21 B.R. 777, 778–79 (Bkrtcy.D.N. M.1982). In the circumstances of this case, however, the court was justified in denying an attempt to relitigate an issue which had been decided very recently, this at least absent a showing of some change in circumstances between the time of the Bankruptcy Court's determination that cause for relief from the stay had not been demonstrated, and the commencement of Lake's latest application for relief from the stay. Significantly, at the hearing on Lake's

motion, the Bankruptcy Judge determined that Lake had raised no new factual issues. (Hearing on Motion of Johns-Manville to Dismiss Lake's Application for Modification of Stay, May 12, 1983, p. 17). This Court agrees.

**4.** Two additional parties, the Committee of Unsecured Creditors of Johns-Manville Corporation, and Travelers Indemnity Company, sought to intervene in GAF's appeal from Judge Lifland's order. By Memorandum and Order dated June 21, 1983, the court granted Travelers' motion to intervene, as a party whose interests could be adversely affected by the resolution of GAF's appeal. See Rule 24(a)(2), F.R.Civ.P. By endorsement Order dated July 29, 1983, the Court granted the motion of the Committee, finding that it possessed a statutory right to intervene pursuant to 11 U.S.C. § 1109(b). Both intervenors filed memoranda of law in opposition to GAF's appeal.

Asbestos in its appeal from Judge Lifland's order, and this Court's ruling on the discovery issue in that appeal is fully applicable to GAF as well.

The second issue, one raised independently by GAF, concerns the Court's authority to enjoin direct actions arising under state law against the Debtor's insurance carriers. Initially, in Decision No. 2, the Bankruptcy Court refused to enjoin suits against Manville's insurers and sureties. 26 B.R. at 431–34.[5] Following that decision, issued January 10, 1983, the Bankruptcy Court granted a motion for reargument and rehearing and in a modification of his earlier decision, issued January 26, 1983, Judge Lifland revised his earlier rulings on the propriety of staying direct action suits. The Court ruled that insurance policies and their proceeds and the claims or causes of action which are or may be asserted by Manville against its insurance carriers in pending suits, constituted "substantial property of the Manville estate which will be diminished if and to the extent that third party direct actions against the insurance carriers result in plaintiffs' judgments." *Id.* at 435. The court also determined that if such third-party suits were permitted to continue, the Debtor would be forced to participate actively in those actions in order to protect its interests in what the court determined "may be the most important single asset of its estate." Judge Lifland found that if such suits proceeded to judgment, Manville might also be collaterally estopped on issues of policy coverage and liability. The court concluded that:

"Resolution by one forum, preferably this Court, of the many issues relating to Manville's insurance coverage and the liability of its insurance carriers ... will be in the best interest of all parties in the reorganization proceedings .... Fragmenting these relevant issues by permitting various forums to decide the issues will *frustrate prompt and effective formulation of a plan of reorganization."* 26 B.R. at 435–36 (emphasis added).

In its order on Decision No. 2, issued on April 14, 1983, the court ruled, in part, that all entities were stayed and enjoined from "commencing, concluding, or continuing any direct state actions suits against Manville's insurers and sureties and from commencing, conducting or continuing any discovery proceedings." *Id.* at p. 223.

GAF argues that neither the Bankruptcy Court nor this Court have jurisdiction over this case following the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). They also argue that the referral rule adopted by the United States District Court for the Southern District of New York (Emergency Bankruptcy Rule I) through which the Bankruptcy Court in this District continues to oversee bankruptcy proceedings, represents an unconstitutional attempt by the district courts to delegate authority.

These arguments need not detain us. Since this appeal was submitted, our Court of Appeals has upheld the district courts' jurisdiction over bankruptcy matters under both 28 U.S.C. § 1471 and 28 U.S.C. § 1334 (1976), and determined that the district courts' authority over bankruptcy matters

---

**5.** In the modification of Decision No. 2, Judge Lifland suggested that his decision should not be read as holding that all pending lawsuits against Manville's insurers could proceed unimpeded:

"In Decision No. 2 the Court, *in two (2) specific instances,* indicated that it will modify the automatic stay of Section 362 to permit the continuation of appeals in those instances where a supersedeas bond has been posted by Manville since Manville does not have a property interest in the supersedeas bonds. By contrast, successful third party claimants in direct actions against Manville's insurance carriers would receive payment from funds which would otherwise be available, for the most part, to the Manville estate." 26 B.R. at 435 (emphasis added).

However, in considering Manville's application to extend the stay to cover insurers and sureties, the court in Decision No. 2 had addressed not just those suits, but considered whether *all* third party suits against insurers should be stayed. The court then concluded that the stay should not be so extended. *Id.* at 431.

is not affected by the *Marathon* decision. *In re Kaiser,* 722 F.2d 1574 at 1577–78 (2d Cir.1983). In addition, the Court of Appeals determined that the district courts acted properly by promulgating rules for bankruptcy adjudication following *Marathon,* and also upheld the constitutionality of our Emergency Rule itself. *Id.* at 1578–81.

■ GAF also argues that since the direct action suits in this case are based on state law, *Marathon,* which denies the bankruptcy judges' power to decide related common law state claims, 102 S.Ct. at 2880, n. 40, requires reversal of the Bankruptcy Court's decision insofar as it attempts to enjoin direct actions suits against the insurers founded on state law. The answer to this argument is that the issuance and continuance of stays under §§ 105 and 362 is a bankruptcy matter arising directly under the Code. Stays against proceedings in other courts are issued pursuant to the Bankruptcy Court's authority to protect the Debtor's estate and its ability to undertake the reorganization process. The granting, denial or modification of stays clearly does not constitute "related" claims based upon state law.

Significantly, the Emergency Rules themselves explicitly remove stay proceedings from the definition of those "related proceedings" over which the Bankruptcy Court has no jurisdiction: "Related proceedings do not include: ... proceedings in respect to lifting of the automatic stay." [Emergency Rule I(d)(3)(A)].

■ In addition to its Constitutional arguments, GAF contends that § 362 operates solely to stay proceedings against the Debtor and his property, and is insufficiently broad to encompass independent claims against the Debtor's insurers. Essentially, GAF contends, although it does not cite § 541 of the Code, that Manville's insurance is not "property" of its estate under that section, and hence is not subject to the automatic stay provision which operates to stay "any act to obtain possession of property of the estate or of property from the estate." That insurance falls

within the scope of the Debtor's "property" is suggested by the expansive fashion in which property has been defined generally under the Code:

"The scope of this paragraph [§ 541(a)(1)] is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property specified in Section 70a of the Bankruptcy Act." *United States v. Whiting Pools,* 462 U.S. 198, 103 S.Ct. 2309, 2313, n. 9, 76 L.Ed.2d 515 (1983) *quoting* H.R.Rep.No. 95–595, p. 367 (1977); S.Rep.No. 95–989, p. 82 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5568, 6323.

In *Whiting Pools,* the Supreme Court held that the reorganization estate includes property of the Debtor which has been seized by a creditor prior to the filing of the bankruptcy petition. In so ruling, the Court stressed that "both the congressional goal of encouraging reorganization and Congress' choice of methods to protect secured creditors suggest that Congress intended a *broad range of property to be included in the estate.*" *Id.* 103 S.Ct. at 2313 (emphasis added). The Court observed that definitions of the "estate" should be viewed as delineating what is included in the estate, rather than suggesting that forms of property which are not so mentioned are excluded from the scope of the estate. *Id.* at 2313, n. 8.

That Manville's insurance is property of its estate is supported as well by decisional law holding that insurance constitutes property of the estate. *E.g., In re Pearl-Wick Corporation,* 15 B.R. 143 (Bkrtcy.S. D.N.Y.1981), *aff'd.,* 26 B.R. 604 (D.C.S.D.N.Y.1982), *aff'd.,* 697 F.2d 295 (2d Cir.1982); *In re Moskowitz,* 13 B.R. 357 (Bkrtcy.S.D. N.Y.1981); *In re Norman Industries,* 1 B.R. 162 (Bkrtcy.W.D.La.1979).

Moreover, as Manville notes, the fact that it ultimately may not receive all of the proceeds under its products liability insurance does not affect its status as property under the Code subject to the provisions of the automatic stay. See, *e.g., In re Mego*

*International, Inc.,* 28 B.R. 324 (Bkrtcy.S. D.N.Y.1983).

Because the Court has determined that Manville's insurance is property of the estate under the Code and that actions by third parties against the bankrupt's insurers are automatically stayed upon the filing of the petition, we need not address GAF's contention that the Bankruptcy Court had no authority to stay proceedings against Manville's insurers pursuant to § 105. However, as this Court has observed in addressing Lake's appeal, the Court will normally have power under § 105 "to enjoin actions excepted from the automatic stay which might interfere in the rehabilitative process." 2 Collier on Bankruptcy § 362.02.

*Conclusion*

The Bankruptcy Court's order of April 14, 1983 pertaining to the automatic stay, and its order of May 23, 1983 granting the Debtor's motion to dismiss Lake's April 20, 1983 complaint, are affirmed, insofar as they are sought to be reviewed in the three appeals addressed by the Court herein. In so doing, this Court reiterates that affirmance of these denials of relief from the stay by the Bankruptcy Court is without prejudice to future application(s) for complete or partial relief from the stays imposed pursuant to § 362 of the Bankruptcy Code and the Bankruptcy Court's prior orders, based on the circumstances and the equities of the case as they may then exist.

So Ordered.