### In re JOHNS–MANVILLE CORPORATION, et al., Debtors.

### NORTON COMPANY and Textron, Inc., Appellants,

### v.

### JOHNS–MANVILLE CORPORATION, et al., Appellees.

### No. 84 Civ. 0884 (PNL).

United States District Court, S.D. New York.

April 24, 1984.

Clapp & Eisenberg, Arnold Mytelka, Newark, N.J., for appellants.

Davis, Polk & Wardwell, Miriam Cedarbaum, Levin, Weintraub & Crames, New York City, for debtors-appellees.

---

## OPINION AND ORDER

LEVAL, District Judge.

Norton Company and Textron, Inc. appeal from an order of Judge Burton Lifland of the Bankruptcy Court denying their request pursuant to 11 U.S.C. § 362(d) to be permitted, in spite of the bankruptcy stay, to take discovery of Johns-Manville Corp. in connection with actions pending against them in Louisiana. I find that the appellants have made a powerful showing in support of their contentions and that the order of the bankruptcy court must be vacated. The harm resulting to appellants from the refusal to allow the discovery is enormous and irremediable. In contrast I find no persuasive interest of Manville to justify the harmful effects of the decision on the appellants.

The plaintiffs in the Louisiana actions are former or present employees of a Manville plant in Marrero, Louisiana, who allege that they contracted diseases from exposure to asbestos at the plant. The actions were brought also against Manville. Norton and Textron are named as defendants as the manufacturers of an allegedly defective filtration mask (the "N/T mask") which the plaintiffs allege was used by them at the Marrero plant. Manville has reached settlements with some plaintiffs; other cases have been stayed as against Manville by reason of its filing for reorganization but proceed against Norton and Textron.

Norton and Textron sought relief from the automatic stay in bankruptcy to the extent of permission to obtain from Manville documents and answers to interrogatories that they contend are crucial to establishing their defenses in the Marrero cases. The requests for document production and interrogatories, as set forth in exhibits to the affidavit of Phillip A. Wittmann, Esq. are relatively straightforward, specific, and limited to the operations of the Marrero plant. The documents sought cover medical and employment histories of the Marrero plaintiffs; purchase records for N/T masks and procedures for their use; dust counts at Marrero and explana-tions of methodology used in measuring asbestos concentration; decisions involving the use of respirator masks; installation and functioning of devices and other precautions taken to lower levels of asbestos fibers; and the reduction in use of asbestos materials.

The nine interrogatories are similarly focused on the Marrero plant. They seek the model numbers, dates of purchase and persons with responsibility for the maintenance of all respirators; the dates on which particular plant departments commenced and ceased operations and when the use of asbestos materials ended; information regarding the use of engineering controls at the departments and the names of persons with responsibility for them; and names of persons who participated in the collection of dust samples and are able to interpret documents on them.

As yet there has been no formal request for depositions, but appellants foresee a likelihood that they may also require the deposition of some Manville employees, primarily at the Marrero plant, on the same subjects.

The appellants show convincingly that they will be enormously prejudiced by denial of access to this discovery. The prejudice will apply to numerous disputed issues in the Louisiana lawsuits. In the first place, Norton/Textron have no way of verifying without the Marrero plant purchase and equipment utilization records whether their masks were being used by the plaintiffs in the periods in question. (It appears these masks were not sold directly by the manufacturer but by a distributor which has gone out of business and whose records are unavailable.) On this issue, appellants contend they may escape responsibility altogether if Manville's Marrero records showed that the N/T masks were not being used by plaintiffs in the crucial time periods. Secondly they contend the extent of their implication can be importantly limited by this information: If a plaintiff worked for twenty years at the Marrero plant with asbestos exposure throughout, but used the N/T mask for

only the last two or three years of the twenty year employment, Norton/Textron might be responsible for only a small percentage of the exposure. This would be all the more true if the use of the mask was during the period of smallest exposure to asbestos dust. Norton/Textron contend that in the career of an average Marrero plaintiff, the major bulk of his employment was during times when no precautions, or few, were being taken by Manville to reduce asbestos dust levels. In contrast, they contend, the relatively short later periods when masks were being used were periods of high consciousness of the risk when Manville was taking great precautions including air filtration and reduced usage of asbestos materials. This information, Norton/Textron contend, would show that only a tiny percentage of a plaintiff's inhalation of asbestos fibres could be attributable to the period of N/T mask utilization. And without this discovery, they contend convincingly, they will be unable to prove the proper maximum limits of their responsibility and will face a likely risk of being held unfairly for all, or in any event an improperly high percentage, of the plaintiffs' loss.

Apart from the contentions that Norton/Textron can obtain personnel files directly from the Marrero plaintiffs and could have acquired further information prior to Manville's bankruptcy filing, Manville has offered nothing of substance to contradict the prejudice inflicted on Norton/Textron by the denial of discovery.

I conclude that the deprivation of this discovery is of devastating prejudice to Norton/Textron in facing the pending Marrero trial.

As against the prejudice to Norton/Textron, there must be weighed the interests which led the bankruptcy court to deny the discovery. This decision was based on two grounds: First, Judge Lifland ruled that the application presented circumstances virtually identical to prior rulings in which discovery had been denied. *In re Johns-Manville Corp.* (*Applications of Lake and Occidental*), 26 B.R. 420 (Bkrtcy.N.Y. 1983), *Application of Lake aff'd,* 40 B.R. 219 (S.D.N.Y. Jan. 9, 1984) (Brieant, J.) Second, Judge Lifland reasoned that Manville was engaged in "the most intense and key part of the plan formulation process" and needed freedom from the energy and resource drains that exposure to discovery would entail. He noted that such discovery, if permitted in this case, would be opened in numerous actions with the result that the time and energies of the company's executives, and its attorneys would be directed from the formulation of the plan. Manville's counsel, at argument in this court, added the contentions that Manville's financial resources would go to discovery litigation at the expense of claimants and that the energies of the Bankruptcy Judge and bankruptcy counsel would be diverted from the central issues of the reorganization.

In my view, these concerns are in part overstated and, in any event, relatively insubstantial when assessed alongside the prejudice to Norton/Textron discussed above.

In the first place, the discovery here sought is not substantially similar to that sought by *Lake* and *Occidental*. As Judge Brieant stressed in his affirming opinion, the persons of whom discovery was there sought were high executives and persons deeply involved in the reorganization negotiations. ("all of the directors, including the Chairman of Manville's Board would have to invest substantial time...."). The Bankruptcy judge there wrote, "The massive drain on these numerous individuals' time and energy at this crucial hour of plan formulation .... could frustrate if not doom their vital efforts at formulating a fair and equitable plan of reorganization." 26 B.R. at 426. Here the discovery would involve primarily, or exclusively, local Marrero documents and personnel. Manville has made no showing that this discovery would involve anyone significantly responsible for high level corporate management or reorganization negotiations.

It should be noted furthermore that in the earlier opinion, Judge Lifland was con-

sidering jointly the qeustions whether the Manville employees were liable to suit as individuals and to discovery. Much of his reasoning related to the time they would need to commit to their defense if they could be sued. Those considerations are not involved here. Accordingly the *Lake* and *Occidental* rulings are at best weak precedents for this ruling; in my view, they are precedents pointing toward the opposite conclusion on this application. *See Teledyne Industries, Inc. v. Eon Corp.*, 373 F.Supp. 191 (S.D.N.Y.1974) (stay lifted to permit document discovery of reorganization debtor in action brought personally against its directors).

Second, although both the bankruptcy judge and the district court's affirming opinion in *Lake* stressed the "temporary" nature of the discovery stay during the "crucial hour of plan formulation," it is now well over a year since the bankruptcy court's Occidental-Lake ruling on January 10, 1983.

Third, although furnishing discovery sought by third parties, who require it for lawsuits outside the bankruptcy proceeding, will undoubtedly cost Manville some expenditure of funds and attention of counsel, no showing has been made that such expenditures would imperil the reorganization or the interests of Manville's creditors. The present ruling of the bankruptcy court is virtually categorical. With insignificant exceptions, no discovery will be had of Manville by third parties. Such a blanket denial, irrespective of the harm to third parties, cannot, in my view, be justified by the circumstances.

Several observations are pertinent on this subject.

1. Manville is a giant corporation of vast resources. It can well afford the expense of furnishing fairly demanded disclosure without prejudice to either the interests of its creditors or the ability to reorganize.

2. The universal jurisdiction and wide discretion of the bankruptcy court over applications for discovery of Manville can be used to achieve great economies in such discovery proceedings.[1] Discovery seekers could be required to submit joint applications managed by a lead counsel (or even by counsel engaged as trustee for the interests of all the discovery seekers). Depositions could be conducted in one time joint sessions. The vast discretion of the bankruptcy court could be employed to impose strict limits and to insure that neither the discovery seekers nor the defender engaged in the expensive, wasteful and abusive practices which have become so commonplace.

3. Manville's bankruptcy counsel argued that its own energies and those of the overtaxed bankruptcy judge would be diverted from their principal responsibility by discovery proceedings. There is no reason why this need be so. The furnishing of disclosure on such subjects as local plants dust levels is a matter quite distinct from the devising and negotiation of a reorganization plan. It would not require Judge Lifland's personal attention but could be entrusted to a master who would take responsibility over all such discovery matters. Also separate counsel could be employed for Manville to handle disclosure matters without imposition on the energies and manpower of the attorneys engaged in the formulation and negotiation of the plan.

4. Finally, notwithstanding the importance and the difficulty of achieving a successful reorganization, that objective cannot properly be the sole consideration, to the exclusion of legitimate fair interests of third parties. This is especially true where Manville has made no showing that the furnishing of disclosure is incompatible with the successful achievement of its reorganization.

1. The allowance of such discovery does not necessarily require lifting the stay so as to make the debtor available without limitation to other courts; just as the claims of claimants are prosecuted in the bankruptcy court, discovery of the debtor also may be conducted under the supervision of the bankruptcy court, on such terms and conditions as it establishes.

The order of the bankruptcy court is reversed.[2] Manville is directed to furnish discovery to Norton/Textron expeditiously so as to be timely for its Louisiana litigation. Although the district court in the Louisiana litigation understandably denied Norton/Textron's applications for long continuing delays out of solicitude for the interests of the plaintiffs,[3] that court may be willing to grant some reasonable continuance to allow Norton/Textron to take advantage of this ruling by obtaining information they need for trial.

SO ORDERED.

2. Since the status of the bankruptcy court, and hence the standard of review on appeal, have been unclear since *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), I note that this decision would be the same whether the bankruptcy court's authority is conferred by the district court or is independent and reviewable on such matters only as to the limits of permissible discretion.

3. Manville argues that implicit in the Louisiana court's denial of a stay was a finding that defendants had no important need for the discovery. No such inference is warranted. The Louisiana judge merely gave precedence to the plaintiffs' need for a trial over defendants' need for evidence.