Irma BAEZ, Appellant–Cross–Appellee,

v.

**MEDICAL LIABILITY MUTUAL IN-
SURANCE COMPANY, Appellee–
Cross–Appellant.**

Nos. 89 Civ. 7835 (JES),
90 Civ. 0584 (JES).

United States District Court,
S.D. New York.

Jan. 28, 1992.

**66**

Reichenbaum & Silberstein, P.C., Great Neck, N.Y. (Joseph P. Awad, Meryl R. Neuren, Vickie R. Silver, Jerome D. Silberstein, of counsel), for appellant-cross-appellee.

Kane, Kessler, Proujansky, Tullman, Preiss & Nurnberg, P.C., New York City (Jeffrey Oppenheim, of counsel), for appellee-cross-appellant.

## OPINION AND ORDER

SPRIZZO, District Judge.

Appellant Irma Baez ("Baez") appeals from an order of the United States Bankruptcy Court, Blackshear, B.J., denying her motion for post-petition interest on her pre-petition claim. Medical Liability Mutual Insurance Company ("MLMIC") cross-appeals from an order of the bankruptcy court which approved a Stipulation of Damages between MLMIC and Baez or, alternatively, seeks affirmance of the order denying interest. For the reasons that follow, the order approving the Stipulation of Damages is affirmed and the order denying Baez interest is reversed.

## BACKGROUND

The following facts are undisputed.

Baez was a patient of debtors Richard L. Dombroff, M.D. and Richard L. Dombroff, M.D., P.C. d/b/a Personal Best (collectively "Dombroff") between 1981 and 1982. During this period, MLMIC insured Dombroff for medical malpractice judgments up to $1,000,000 per occurrence and $3,000,000 maximum aggregate limitation per period, as well as all interest on the entire amount of any judgments which accrued before MLMIC paid, tendered, or deposited the money.

On April 3, 1986, following a jury trial, Baez obtained an original judgment for $2,500,000 in the New York State Supreme Court, Kings County against Dombroff for medical malpractice. On the next day, April 4, 1986, Dombroff filed for bankruptcy under Chapter 11 of the Bankruptcy Code, which triggered the automatic stay set forth in section 362 of the Bankruptcy Code as to all judicial proceedings, including Baez's action against Dombroff. On July 10, 1986, the petition was converted from Chapter 11 to Chapter 7.

Subsequently, on December 5, 1986, the bankruptcy court granted Baez's motion seeking a modification of the automatic stay to allow her to proceed to final judgment in her state court action. Thereafter, the trial judge reduced the verdict of $2,625,000 to $1,500,000, and on July 25, 1988, the Appellate Division set aside the $1,500,000 judgment and substituted $750,000, or in the alternative, directed a new trial solely on the issue of damages.

In February 1989, the bankruptcy court approved a Medical Malpractice Settlement Agreement (the "Settlement Agreement"), in which all interested parties, including Baez and MLMIC, who had malpractice claims against Dombroff agreed to a procedure for the resolution and satisfaction of those claims. The Settlement Agreement provided that the claimants and the insurance carriers could either agree upon a stipulated amount of damages in satisfaction of the claimant's claims, *see* Settlement Agreement ¶¶ 31–32, or could go through a dispute resolution procedure, which was in effect a mini-trial solely on the issue of damages. *See* Settlement Agreement ¶¶ 39–49. Since Baez had already obtained a judgment in state court and claimed that MLMIC had agreed to settle the action with her for $1,000,000.00 while it was on appeal, special provisions were inserted in the Settlement Agreement with respect to her, including a provision that she could make an application to the bankruptcy court seeking interest on the amount of her damages.[1] *See* Settlement Agreement ¶¶ 3, 68.

1. The relevant provision of the Settlement Agreement provides in part:

On April 10, 1989, the bankruptcy court directed MLMIC to pay $750,000 to the Trustee within 30 days after entry of the order which MLMIC timely paid on May 8, 1989. On May 9, the bankruptcy court directed that the $750,000 be placed in escrow in an interest bearing account pending a further court order defining Baez's rights under the Settlement Agreement. Thereafter, on October 10, 1989, the bankruptcy court held that the $750,000 judgment was a Stipulation of Damages between MLMIC and Baez and directed the Trustee to disburse $525,000 to Baez as an interim distribution.

Baez then filed a motion seeking interest that she contended was owed to her by MLMIC on the $750,000 Stipulation of Damages, accruing as of April 3, 1986, the date of the state court judgment, to on or about May 8, 1989, (the "judgment interest") as well as the interest accruing on the funds held in escrow by the Trustee (the "escrow interest"). However, in an opinion dated November 30, 1989, which was incorporated into an order dated December 19, 1989 and entered on January 3, 1990, the bankruptcy court denied Baez's motion.

The bankruptcy court reasoned that Baez's right to interest must be determined by the terms of the Settlement Agreement,

which superseded the terms of the original policy, and that since the Settlement Agreement, unlike the underlying policy, did not provide for the payment of interest, Baez had no right to interest based on that agreement. The court concluded therefore that, as would be the case with any other unsecured creditor with a pre-petition claim, Baez was not entitled to the payment of interest since she should not obtain an unfair preference over other unsecured creditors.

## DISCUSSION

■ Turning first to the merits of MLMIC's cross-appeal, the Court rejects MLMIC's argument that the bankruptcy court erred in treating the amount of Baez's state court judgment as a Stipulation of Damages because Baez, in reserving her right to seek interest, did not compromise all of her claims.[2] The Settlement Agreement expressly provided that Baez could treat the order of the Appellate Division which reduced the judgment to $750,000 as a Stipulation of Damages even though she reserved her right to assert a claim for interest on that amount. Accordingly, the bankruptcy court's order finding that the payment of $750,000 constituted a Stipulation of Damages is affirmed.[3]

[I]n the event that Allowed Claimant Irma Baez ("BAEZ") signs this Settlement Agreement, BAEZ shall be entitled to bring an action in the Bankruptcy Court or in the Supreme Court of the State of New York against Dombroff and MLMIC in which the only issue shall be whether BAEZ agreed with MLMIC, MLMIC's officers, agents, directors or employees to settle BAEZ's claims against Dombroff for the sum of ONE MILLION DOLLARS ($1,000,000.00) and the only issue to be decided in that action shall be whether there was such an agreement to settle between BAEZ and MLMIC, and whether that agreement was breached, and should BAEZ obtain a final judgment or final order that there was such an agreement to settle BAEZ's claims against Dombroff for ONE MILLION DOLLARS (1,000,000.00) then BAEZ shall not execute on any such judgment but may only assert before the Bankruptcy Court as part of the Agreement, that the alleged ONE MILLION DOLLARS ($1,000,000.00) settlement should constitute a Stipulation of Damages as provided in paragraph 31 of the Agreement, and BAEZ shall be entitled to assert before the Bankruptcy Court that BAEZ is entitled to interest on

that alleged settlement. Notwithstanding the foregoing, BAEZ is entitled to request the Bankruptcy Court to treat the Order of the Appellate Division, dated July 25, 1988, which reduced the judgment to SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($750,000.00) as a Stipulation of Damages and BAEZ is entitled to assert before the Bankruptcy Court a claim for interest on that amount.
Settlement Agreement ¶ 3.

2. The Settlement Agreement provides in relevant part that "[a] Stipulation of Damages is an agreement in writing in which the Allowed Claimant and the appropriate insurer ... agree to a specific amount in satisfaction of all of the Allowed Claimant's claims against Dr. Dombroff and Dombroff, P.C." Settlement Agreement ¶ 31.

3. The Court rejects Baez's argument that MLMIC waived its right to appeal from this order under paragraph 86 of the Settlement Agreement, which provides that no party to the Settlement Agreement could appeal from an order approving a Stipulation of Damages. A fair

■ However, the order denying interest must be reversed. Although an insurance policy purchased by a bankrupt and the proceeds thereof are ordinarily part of the bankrupt's estate, *see, e.g., MacArthur Co. v. Johns–Manville Corp.,* 837 F.2d 89, 92 (2d Cir.), *cert. denied,* 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988); *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1001–02 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *In re Davis,* 730 F.2d 176, 184 (5th Cir.1984); *In re Johns–Manville Corp.,* 40 B.R. 219, 230 (Bankr.S.D.N.Y.1984), a special exception to this rule exists where the insured bankrupt has caused a pre-petition injury covered by the policy. In that situation, upon the filing of a bankruptcy petition, the insured is divested of his interest in the proceeds of the policy to the extent that those proceeds are needed to compensate the injured party, which proceeds at that point vest in the injured party. *See* N.Y.Ins.Law § 3420(a)(1) (McKinney 1985).[4]

Moreover, the Supreme Court has specifically rejected a challenge to that statute on the ground that it creates a preference between creditors and thus conflicts with the bankruptcy laws. Thus, in *Merchant's Mutual Automobile Liability Ins. Co. v. Smart,* 267 U.S. 126, 45 S.Ct. 320, 69 L.Ed. 538 (1925), the Supreme Court stated:

> The title to the indemnity passes out of the bankrupt or insolvent person and vests in him in whom the contract and the state law declares it should vest. The assured is divested by the terms of the instrument under which the interest of the assured and the interest of the injured then contingent, and now absolute, were created. The general creditors have lost nothing because by the fact of bankruptcy the interest of the assured in the policy passed to the injured person and did not become assets of the assured.

*Id.* at 131, 45 S.Ct. at 321; *see also In re F.O. Baroff Co.,* 555 F.2d 38, 41–42 (2d Cir.1977).

■ It follows that upon the filing of the bankruptcy petition, Baez had a vested interest in the proceeds of the policy, including interest payable on any sums to which she was entitled to compensate her for her injury, and that the bankruptcy court therefore erred in concluding that she should stand in the same position as other unsecured creditors. In sum, by virtue of New York law she stood in a preferential position because of her vested rights,[5] a preference that has been found not inconsistent with the bankruptcy laws.

■ The Court rejects MLMIC's argument that because the automatic stay provisions of the Bankruptcy Code would have precluded a direct action against the insurer, that somehow Baez cannot raise her claim before the bankruptcy court. Without reaching the merits of whether such an action could or could not have been brought in the state court, an issue hotly contested here, there can be no doubt that such claims may properly be asserted in the bankruptcy court. *See Merchant's Liability Co., supra,* 267 U.S. at 131, 45 S.Ct. at 321; *Baroff, supra,* 555 F.2d at 42.

■ Nor is there any merit to the claim that Baez's alleged failure to properly serve a notice of judgment is relevant to her right to seek interest from the bank-

---

reading of that clause does not foreclose a party's right to contest whether under the Settlement Agreement that settlement was in fact a Stipulation of Damages. In any event, the clause certainly does not constitute an unequivocal waiver of the right to contest that issue, and waivers are not to be inferred in the face of a reasonable ambiguity as to whether there has in fact been a waiver.

**4.** That section requires that each policy of liability insurance contain the following provision:
A provision that the insolvency or bankruptcy of the person insured, or the insolvency of his

estate, shall *not* release the insurer from the payment of damages for injury sustained or loss occasioned during the life of and within the coverage of such policy or contract. N.Y.Ins.Law § 3420(a)(1) (McKinney 1985).

**5.** To the extent that some other creditors stood in the same position as Baez, *i.e.,* had claims against the debtor for injuries due to malpractice, those creditors could have sought interest as well had they, like Baez, reserved their right to do so in the Settlement Agreement.

ruptcy court. That alleged failure would only be relevant in deciding whether or not a direct action against the insurer could properly have been brought in the state court.

### CONCLUSION

Accordingly, for the reasons set forth above, the bankruptcy court's order approving the Stipulation of Damages (appeal number 89 Civ. 7835(JES)) is affirmed. The bankruptcy court's order denying Baez's motion for interest (appeal number 90 Civ. 0584 (JES)) is reversed.

It is SO ORDERED.