In re JOHNS–MANVILLE CORPORATION, et al., Debtors.

OCCIDENTAL CHEMICAL CORPORATION, Plaintiff-Appellant,

v.

JOHNS–MANVILLE CORPORATION, et al., Defendants-Appellees.

No. 83 Civ. 3561–CSH.

United States District Court, S.D. New York.

July 31, 1984.

As Amended Sept. 5, 1984.

Conboy, Hewitt, O'Brien & Boardman, New York City (David R. Davies, New York City, of counsel), Carpenter, Bennett & Morrissey, Newark, N.J. (John E. Keale, Newark, N.J., of counsel), for plaintiff-appellant.

Davis, Polk & Wardwell, New York City (Lowell Gordon Harriss, Miriam G. Cedarbaum, Susan P. Johnston, New York City, of counsel), Levin & Weintraub & Crames, New York City (Herbert S. Edelman, New York City, of counsel), for defendants-appellees.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Occidental Chemical Corporation ("Occidental") appeals from an order of the Bankruptcy Court (Burton R. Lifland, Judge) denying Occidental's application for relief from the stay of proceedings entered pursuant to 11 U.S.C. § 362 in reorganization proceedings commenced by appellee Johns-Manville Corporation ("Manville"). Occidental sought pre-trial discovery of Manville in aid of its defense of third-party asbestosis litigation. Judge Lifland denied Occidental's application, together with comparable applications of similarly situated parties, in a comprehensive opinion dated January 10, 1983, reported at 26 B.R. 420 (Bankr.S.D.N.Y.1983), and implemented by order dated March 21, 1983. Prosecution of the appeal has been delayed by the circumstances about to be related.

Occidental uses asbestos in its chemical manufacturing processes. According to its offer of proof, in December 1974 Occidental made one sale to Manville of surplus asbestos fiber which it had in one of its factories. Manville used Occidental's fiber at its plant at Manville, New Jersey. All the asbestos fiber in question was used in one building of the Manville facility, the "I" building, and was completely consumed during 1975.

During 1977 through 1980, nine actions involving numerous claims for death or injury were commenced in the United States District Court for the District of New Jersey by employees or former employees of Manville at the Manville plant. These suits allege injury or death as a result of exposure to asbestos fiber or asbestos-containing products during the course of employment at the Manville facility. Manville and various of its subdivisions are defendants. Occidental is also a defendant in these actions.

On August 26, 1982 the Manville entities filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. That petition was triggered by the thousands of claims asserted against Manville by asbestosis sufferers. The § 362 stay of proceedings took effect that day. One of the New Jersey suits is *Bialy v. Johns-Manville, et. al.*, Civ. No. 79-1336 (D.N.J.). This appeal is particularly concerned with *Bialy* for reasons that will appear. On October 14, 1982 the district judge to whom *Bialy* was assigned severed all direct claims and crossclaims against the Manville entities. Discovery deadlines were imposed. I infer that comparable orders were made in the other New Jersey cases.

In these circumstances, a number of adversary proceedings and motions came on before Bankruptcy Judge Lifland. A number of companies such as Occidental found themselves in comparable situations; that is to say, they were co-defendants with Manville in asbestosis death and injury litigation, with the litigation having been stayed as to Manville, but still proceeding against them. In the omnibus proceedings before Judge Lifland, Manville requested "declaratory relief to extend the automatic stay under Section 362 ... to encompass various direct actions and discovery proceedings brought against present, former and future Manville officers, directors, employees, insurers, sureties and other agents." 26 B.R. at 422. Occidental, for its part, sought "to obtain relief from the automatic stay to depose various representatives of Manville on issues specific to its

factual defense to various asbestos lawsuits pending against it in the District of New Jersey." *Id.* at 424.

Judge Lifland granted Manville significant expansions of the § 362 stay of proceedings to cover discovery against officers and employees of Manville. Manville had argued that exposing its officers and employees to discovery in all the suits whose commencement had triggered the reorganization proceeding in the first place would undermine the reorganization efforts. Judge Lifland accepted that argument, in principle, stating in his opinion:

"The massive drain on these numerous individuals' time and energy at this crucial hour of plan formulation in either defending themselves or in responding to discovery requests could frustrate if not doom their vital efforts at formulating a fair and equitable plan of reorganization." 26 B.R. at 426 (footnote omitted).

Occidental's brief on appeal describes the practical effect of Judge Lifland's ruling:

"By virtue of that opinion, Occidental was precluded from obtaining deposition or trial testimony from current employees of the debtors and was precluded from obtaining documentary evidence necessary to its defense." Brief at 2.

Footnotes to the Occidental brief before this Court indicate that in subsequent proceedings, the bankruptcy judge granted some limited discovery. This is said to include "depositions of former employees of the debtors as well as depositions of any current employees who are named defendants in any given lawsuit." Brief at 2 n. 1. Occidental says that the deposition or trial testimony of these individuals would do it no good in the pending litigation. In addition, at a hearing on March 1, 1983 Judge Lifland directed Manville to provide counsel for Occidental with Manville's certified answers to interrogatories which had been answered and certified prior to the filing of the bankruptcy petition; to provide counsel for Occidental with answers to interrogatories with respect to one deceased plaintiff; and to permit counsel for Occidental to review Manville's records relating to the supply of asbestos fiber and asbestos-containing products to the Manville, New Jersey facility. As to the latter entitlement, Occidental argues that absent the right to obtain testimony of a custodian of those records by deposition or trial testimony (which is barred by the bankruptcy judge's current order), these records cannot be authenticated or admitted into evidence at trial.

In addition to making these arguments, largely unsuccessful, before Judge Lifland, Occidental proceeded on other fronts as well. On April 1, 1983 the United States Court of Appeals for the Third Circuit entered an order temporarily staying the trials of the New Jersey cases. Occidental also undertook settlement discussions with counsel for plaintiffs. It is not entirely clear from the record on this appeal what happened to the stay issued by the Third Circuit; but I infer that, at least in respect of the *Bialy* case, the stay has been lifted. It also appears that settlement efforts were successful as to certain of the cases. But the *Bialy* wrongful death case has not been settled. It is currently scheduled for trial before Judge Stern of the District of New Jersey this fall.

The Third Circuit's stay, and the possibility of settling all cases, caused Occidental to defer prosecution of this appeal. In the present circumstances, however, Occidental now presses its appeal from Judge Lifland's order to obtain discovery from Manville which it regards as essential to its defense of the *Bialy* suit.

The defense which Occidental seeks to establish in *Bialy* is this. *Bialy* was a long-term employee of Manville at the New Jersey facility. *Bialy* worked in the "I" building for some unspecified period in 1975. That year and that location are important because, as noted *supra*, Occidental contends that it furnished asbestos fiber to Manville on only one occasion, and that the fiber was used only in the "I" building and only during 1975.

Occidental's further contentions are summarized in their brief on appeal:

"Levels of airborne asbestos dust at the Manville facility were much higher during the 1930's through the 1960's than during the 1970's when both state and federal restrictions were imposed upon manufacturing facilities. Most plaintiffs in the *Smith* and *Bialy* cases allegedly had continuous and heavy exposure to airborne asbestos dust during the course of their employment at the Manville facility in the decades prior to 1970. Further, the various asbestos related diseases from which plaintiffs allegedly suffer have a latency period of from 15 to 30 years. Given the recognized latency period for asbestos related diseases and given the difference in the levels of plaintiffs' exposure to asbestos over the years of their employment, Occidental contends that any exposure to asbestos fiber supplied by Occidental in 1975 could not have caused or contributed to plaintiffs' illnesses." Brief at 7–8.

While of course intimating no view on the merits, I am bound to say that Occidental asserts plausible lines of defense. In aid of those assertions, Occidental appeals from Judge Lifland's order in order to obtain limited relief from the stay of proceedings against debtors for the purpose of obtaining specific items of discovery. Those items include, according to Occidental's brief on appeal,[1] the following:

"(a) the deposition of a representative of Johns-Manville with knowledge of information contained in Johns-Manville's answers to Interrogatories respecting where and when asbestos fiber supplied by Occidental was used at the Manville facility; (b) the deposition of employees of Johns-Manville with knowledge of Johns-Manville's industrial hygiene surveys of the Manville facility; (c) the production of records and deposition testimony of a representative of Johns-Manville with knowledge of its dust control equipment, maintenance records regard-ing same and any changes in same during the course of plaintiffs' employment; (d) production of records and deposition testimony of a representative of Johns-Manville with knowledge of the company's health practices and procedures at the Manville facility; (e) the deposition of a representative of Johns-Manville with knowledge of the manner in which Occidental's asbestos fiber was used in 'I' Building in 1975; (f) the production of plaintiffs' personnel records and the deposition of the custodian of same for purposes of establishing whether or not a given plaintiff was exposed to asbestos fiber supplied by Occidental; (g) production of records and the deposition testimony of Clifford Sheckler, one of Johns-Manville's former management employees, with respect to an epidemiological survey which was done at the Manville facility; and (h) the production of Johns-Manville's records concerning the supply of asbestos fiber and asbestos containing products to the Manville facility as well as the deposition of the custodian of those records." Brief at 9–10 (footnotes omitted).

Counsel for Manville, while at oral argument not entirely unsympathetic to Occidental's litigation difficulties, insists that Judge Lifland's order should not be disturbed; that the consequences of permitting such discovery in this case (which may very well prompt numerous comparable demands for relief in other asbestos actions) would be distracting, disruptive of the reorganization efforts, and wasteful of the reorganization estate's assets; and that Occidental should pursue other remedies. On that last point, the remedies Manville suggests are an appeal to the trial judge for a stay of the trial, if the evidence sought to be obtained from Manville is as vital to the defense as Occidental says it is; or a renewed application to Bankruptcy Judge Lifland, on the same basis of trial need, so

---

**1.** The quoted excerpts from Occidental's brief refer to the *Bialy* case and to a series of consolidated suits referred to by the plaintiff's name of Smith. According to information supplied by Occidental's Counsel, most of the *Smith* cases have been settled although one *Smith* case and *Bialy* remain for trial. The discovery requests stated in the text of Occidental's brief may therefore have narrowed. But that assumption is not essential to the conclusion I reach.

that the Bankruptcy Judge may strike a proper balance of competing interests in view of the present status of the reorganization proceeding.

Two earlier appeals have been taken to judges of this Court from Bankruptcy Judge Lifland's order staying discovery against Manville. The first of these was taken by Lac D'Amante Du Quebec, Ltd. ("Lake Asbestos"), another furnisher of asbestos fiber to Manville, and co-defendant with Manville in comparable litigation. Lake Asbestos had participated with Occidental in the omnibus proceedings before Judge Lifland. Lake Asbestos's appeal was heard by Judge Brieant. 83 Civ. 3212, 4263, 5018–CLB. In a memorandum and order dated January 9, 1984, Judge Brieant rejected the appeal, holding that the bankruptcy judge had acted "in an appropriate exercise of his discretion" under § 105(a) of the Bankruptcy Code. Slip op. at 12. 11 U.S.C. § 105(a) is the bankruptcy equivalent of the All Writs statute, which authorizes the bankruptcy court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." Judge Brieant stated: "At least as of the present, which is the only time as of which this Court may speak, the determination of the Bankruptcy Court to continue the stay is entirely reasonable, and absolutely necessary if there shall be any hope of reorganizing the Debtor in accordance with the statutory goal." Slip op. at 11. Judge Brieant recognized, however, that "stays of proceedings of the sort present here are not intended to be permanent. They must be reasonable as to scope and duration." Slip op. at 10–11. Judge Brieant concluded his rejection of the Lake Asbestos appeal by reiterating that:

"... affirmance of these denials of relief from the stay by the Bankruptcy Court is without prejudice to future application(s) for complete or partial relief from the stays imposed pursuant to § 362 of the Bankruptcy Code and the Bankruptcy Court's prior orders, based on the circumstances and the equities of the case as they may then exist." Slip op. at 24.

The second appeal was heard by District Judge Leval. The appeal was taken by Norton Company and Textron, Inc. CCH Bankruptcy Law Reports, ¶ 69,862 at 85,083 (S.D.N.Y. April 24, 1984). Former or present employees of a Manville plant in Marrero, Louisiana had commenced asbestosis actions against Manville. Norton and Textron were also named as defendants as the manufacturers of an allegedly defective filtration mask which the plaintiffs alleged was used by them at the Marrero plant. As with Occidental in the case at bar, Norton and Textron were barred from discovery against Manville by Bankruptcy Judge Lifland's order.

Judge Leval reversed that order and permitted discovery to take place against Manville. Norton and Textron were in the first instance requesting document production and sworn answers to interrogatories, although their counsel candidly stated that they "foresee a likelihood that they may also require the deposition of some Manville employees, primarily at the Marrero plant, on the same subjects." CCH Bankruptcy Law Reports, ¶ 69,862 at 85,084. Judge Leval permitted the discovery, which he characterized as "relatively straightforward, specific, and limited to the operations of the Marrero plant," *ibid.*, because he was convinced that Norton and Textron "will be enormously prejudiced by denial of access to this discovery." The defenses asserted by Norton and Textron closely paralleled the defenses which Occidental wishes to assert in the *Bialy* death action in New Jersey. Norton and Textron questioned whether the plaintiffs in question had even used the filtration masks at the pertinent time periods. Secondly, they contended that "the extent of their implication can be importantly limited by this information: If a plaintiff worked for twenty years at the Marrero plant with asbestos exposure throughout, but used the N/T mask for only the last two or three years of the twenty year employment, Norton/Textron might be responsible for only a small percentage of the exposure." *Id.* at 85,084.

Judge Leval recognized the concerns expressed by Bankruptcy Judge Lifland, but concluded that solicitude for Manville's reorganization was not sufficient to overcome the fact that "the deprivation of this discovery is of devastating prejudice to Norton/Textron in facing the pending Marrero trial." *Id.* at 85,085.

Judge Leval distinguished Judge Brieant's affirmance of Judge Lifland in *Lake Asbestos* because Judge Brieant had stressed in his affirming opinion that the persons of whom discovery was there sought "were high executives and persons deeply involved in the reorganization negotiations." *Id.* at 85,085. In his discussion of Judge Brieant's opinion, Judge Leval remarked that "the discovery here sought is not substantially similar to that sought by Lake and Occidental." *Ibid.* If this is intended to suggest that Occidental was involved together with Lake in the appeal before Judge Brieant, I must respectfully note that, as pointed out in the procedural history of the case at bar, that is incorrect. The Occidental appeal had not been perfected before Judge Brieant, and was not before him. The Occidental appeal was perfected before me, and forms the subject matter of this opinion.

Trial counsel for Occidental in the case at bar argue that the discovery requested of Manville in the *Bialy* case is relatively narrow and specific, is limited to the operations of one particular Manville plant, and need by no means engage the energies of all the Manville top brass who are engaged in the reorganization project.

Decision of this appeal requires the balancing of a number of legitimate concerns. Manville's efforts at reorganization, in fulfillment of the purposes and objectives of the Bankruptcy Code as recognized by Bankruptcy Judge Lifland and District Judge Brieant, are of course entitled to consideration. But so are the interests of Occidental, which wishes to make an effective defense to substantial claims. Finally,

the asbestosis plaintiffs or their families (*Bialy* is a death case) must also be considered.

Because of this last-named factor, I have no sympathy with Manville's suggestion that Occidental should attempt to persuade District Judge Stern in New Jersey to further delay the trial of the *Bialy* action if it cannot be settled. Of course, I would not presume to suggest to Judge Stern whether or not he should grant such a stay if Occidental applies to him for it. I hold only that this argument carries no weight with me within the context of the appeal from Judge Lifland's order. That is because those who allegedly suffered or lost family members through exposure to asbestosis are entitled to a resolution of their claims for compensation against parties such as Occidental, who may be liable. It does not gracefully lie in Manville's mouth to say that those remedies should be indefinitely delayed.

I come then to competing interests of Occidental and Manville.[2] In the case at bar, I find myself in agreement with Judge Leval's analysis in the Norton and Textron case. The *Bialy* suit which Occidental is defending in New Jersey involves the death of a Manville employee. What occurred or did not occur at the Manville plant where decedent worked is crucial to the case. Manville is the only source from which Occidental can develop the exculpatory or mitigatory evidence it seeks. Denial of that evidence to a litigant in Occidental's position works a degree of hardship and prejudice which no court should countenance, absent overwhelming policy considerations pointing the other way. In the case at bar, I am not satisfied that Manville has made such a showing. I reach that conclusion, even assuming (which seems plausible enough) that other litigants may be inspired to press demands for the relief which Occidental seeks by this appeal. But even assuming that every Manville co-defendant in an action commenced by a Man-

---

**2.** I also reject Manville's alternative procedural suggestion that Occidental again apply to the Bankruptcy Court for relief. That would consti-

tute an inappropriate abdication of this Court's appellate responsibility.

ville employee (and I am advised by counsel that there are about 1,000 of these) follows suit, I conclude that we have now reached a stage in the proceedings where limited discovery of Manville must be permitted. It is a year and a half since Judge Lifland's original analysis of January 10, 1983. The bankruptcy judge himself characterized his action as "permitting this short breathing spell so as to remove the obstacle to a consensual plan of reorganization," 26 B.R. at 427. That "short breathing spell" has extended for over eighteen months; and, although I am advised that significant progress is being made, particularly in respect of Manville's relations with its liability underwriters, counsel could give me no assurance at oral argument that the end is in sight. In these circumstances, only three alternatives exist. Asbestosis plaintiffs must wait indefinitely for a resolution of their claims (and we deal here with employees in pain or their families in want); defendants such as Occidental must go to trial deprived of possible defenses; or there must be some loosening of the bonds which prevent such litigants from obtaining discovery from Manville.

Balancing the considerations as best I can, I opt for the last of these alternatives, and reverse Bankruptcy Judge Lifland's order insofar as it relates to Occidental. The rationale of this Court, it will be observed, is limited to cases where the plaintiffs were Manville employees, the case arises out of the functioning of a particular Manville plant, and the discovery sought therefore rests within the sole custody and control of Manville itself.

It is also a part of this Court's rationale that, even within these particular boundaries, discovery should be as limited as possible. What a defendant in Occidental's situation urgently needs for its defense should be made available to it; to the extent that the trial judge may minimize the distracting effect upon the Manville reorganization by circumscribing discovery in such cases, he or she is in the best position to do so. There is, for example, nothing to prevent Manville's counsel in a given case from arguing to a trial judge that the very considerations which troubled Bankruptcy Judge Lifland should be considered within the context of a protective order under Rule 26(c), F.R.Civ.P. The trial judge is generally in the best position to evaluate the needs of and appropriate limitations upon discovery. District Judge Stern cannot perform that function in the *Bialy* case because Bankruptcy Judge Lifland's order precludes all discovery from Manville. But Occidental has satisfied me that, in this case at least, the Bankruptcy Court's bar against discovery cannot stand.

I reach that conclusion because of the considerations previously expressed; and also because I am not persuaded that permitting limited discovery in this or comparable cases would bring about so disruptive an effect upon Manville's reorganization efforts as to condone the imposition of an injustice upon others. For that reason I conclude that Judge Lifland's sweeping bar of discovery in respect of Occidental must be reversed. If, under the supervision of the trial judge, such discovery is limited to those precise questions which Occidental needs to know about activities and conditions at the plant in question as they relate to the particular plaintiff, it is hard for me to envision those high-level individuals having the reorganization in charge being forced to abandon that project. To be sure, such discovery activities will cost Manville money; but as Judge Lifland himself recognized:

"Manville is currently a self-professed financially sound efficient enterprise with vast resources." 26 B.R. at 428.

And Judge Leval aptly observed:

"Manville is a giant corporation of vast resources. It can well afford the expense of furnishing fairly demanded disclosure without prejudice to either the interests of its creditors or the ability to reorganize." CCH Bankruptcy Law Reports, ¶ 69,862 at 85,085.

Nothing in the record before me points toward a different conclusion.

For the foregoing reasons, the appeal is allowed. The order of the Bankruptcy

Court is reversed to the extent specified in this opinion, and the case is remanded to the Bankruptcy Court for further proceedings consistent herewith.

It is SO ORDERED.