In re Donald Allen CASNER and Regina E. Casner, Debtors.

Donald Allen Casner and Regina E. Casner, Plaintiffs,

v.

Chase Manhattan Mortgage Corporation, a New Jersey corporation, Defendant.

Bankruptcy No. 01–90267–A–13.
Adversary No. 03–9142–A.

United States Bankruptcy Court,
E.D. California,
Modesto Division.

Dec. 16, 2003.

Darryl J. Chimko, Rochester, MI, Roger L. Efremsky, Pleasant, CA, Sharon L. Mason, Woodland Hills, CA, for creditor.

Carl W. Collins, Modesto, CA, for debtors.

## MEMORANDUM DECISION

THOMAS C. HOLMAN, Bankruptcy Judge.

In this adversary proceeding, plaintiffs Donald and Regina Casner (the "Casners")

seek a temporary injunction under 11 U.S.C. § 105(a) to prevent Defendant Chase Manhattan Mortgage Corporation ("Chase") from foreclosing on their residence. Chase previously obtained an order modifying the automatic stay to allow the foreclosure. The Casners now want additional time to attempt to complete a refinancing that will pay Chase in full and also provide funds sufficient to pay in full all allowed claims in their Chapter 13 case.

Presently before the court is the Casners' motion for a preliminary injunction to restrain Chase's foreclosure pending a determination on the merits of the complaint in this adversary proceeding. For the reasons stated in the balance of this Memorandum Decision, the court grants a preliminary injunction prohibiting foreclosure pending entry of judgment after trial on the complaint.

### PROCEDURAL BACKGROUND

On June 19, 2003, the court entered an Order Granting Relief From Automatic Stay (the "Order Granting Relief From Stay") in favor of Chase. The events leading up to that order are explained in the factual background below. Chase scheduled a foreclosure sale for August 8, 2003.

On July 25, 2003, the Casners filed an unverified "COMPLAINT FOR INJUNCTIVE RELIEF, OR IN THE ALTERNATIVE REINSTATEMENT OF THE AUTOMATIC STAY" (the "Complaint"). The Complaint alleges, *inter alia*, that Chase is the holder of the first deed of trust on the Casners' residence (the "Real Property"), that on May 21, 2003, the Casners submitted an application to a mortgage broker, Equity Funding Co. ("EFC"), for a refinancing of the debts secured by the Real Property, that on June 19, 2003 the court entered an order granting Chase relief from the automatic stay to foreclose on the Real Property, that on or about June 24, 2003 EFC gave the Casners a "pre-approval" for a loan on the Real Property in the amount of $175,000, that on June 24, 2003 an escrow was opened at a title company for the refinancing, that on July 9, 2003 Chase submitted to escrow a payoff demand stating that the payoff balance on its loan was $148,260.94 through July 31, 2003, that the amount necessary to pay all allowed unsecured claims in the Casners' Chapter 13 case in full is $13,711.00, that on July 18, 2003, Chase posted the Real Property with a Notice of Trustee's Sale setting a sale date and time of August 8, 2003 at 2:00 p.m. and that EFC has obtained an opinion of value as part of the proposed refinancing indicating that the current fair market value of the Real Property is $240,000.00.[1] The Complaint prays for an injunction prohibiting Chase from foreclosing on the Real Property "for a reasonable period of time to allow the debtors to close the refinancing escrow and modify their Chapter 13 plan to pay off the obligation owed to CHASE in full, to provide for a 100% distribution to allowed unsecured claims and receive a discharge in bankruptcy," or in the alternative, for an order reinstating the automatic stay.

On July 25, 2003, the Casners also filed an APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION (the "Application"). The Application recited facts similar to those in the Complaint. It requested a temporary restraining order until a hearing could be held on the motion for a preliminary injunction, a pre-

---

1. The Casners listed the Real Property in their Schedule A, filed with the petition on January 22, 2001, as having a then-current market value of $200,000.00, subject to a secured claim of $148,556.51.

liminary injunction "until trial may be had on the debtors' complaint," or in the alternative, a reinstatement of the automatic stay. The Application was accompanied by the declarations of Carl W. Collins, the Casners' counsel (regarding his communications with counsel for Chase), Ron Findlay, a Senior Loan Officer at EFC (regarding the refinancing application, the value of the Real Property and his expectation that the refinancing would close in approximately thirty days) and Regina E. Casner, one of the debtors (regarding the other facts alleged in the Complaint and Application).

On July 28, 2003 the court entered an order (the "Order Shortening Time") denying the temporary restraining order (because no injury would occur prior to August 8, 2003) and setting a hearing on the preliminary injunction on August 6, 2003.

On August 4, 2003, Chase timely filed opposition to the request for preliminary injunction according to the terms of the Order Shortening Time. Chase argued that the request was improper because the Casners had not appealed the Order Granting Relief From Stay. It also argued that the preliminary injunction should be denied because the refinancing described in the Application was speculative.

After the hearing on August 6, 2003, in order to allow time for further consideration, the court issued a temporary re-

straining order, expiring at 5:01 p.m. on August 15, 2003.[2]

## FACTUAL BACKGROUND

The Casners' request for injunctive relief arises in the bankruptcy case that they commenced by filing a petition under Chapter 13 of the Bankruptcy Code on January 22, 2001. At the time of the filing, Mr. Casner was a material handler/forklift operator employed for the previous twenty years by the Defense Logistic Agency of the United States Department of Defense in Tracy, California. Mrs. Casner was a material handler/forklift operator employed for the previous fourteen years by the Defense Logistic Agency of the United States Department of Defense in French Camp, California. They had two dependent children, a sixteen year-old daughter and a twelve year-old son. They had combined monthly take-home pay of $4,274.54 and monthly living expenses of $3,974.56, including the then-existing monthly payment to Chase of $1,493.00.

The Casners timely filed a Chapter 13 plan. They subsequently filed an amended plan to cure the objection of a secured creditor other than Chase; the objection was withdrawn, no other objections were filed and the amended plan was confirmed by order entered May 24, 2001.

At the time of the bankruptcy filing, the Chase claim was at least eight months delinquent.[3] The confirmed plan required

---

2. On August 14, 2003, because of the impending expiration of the temporary restraining order, the court issued a preliminary injunction and stated its intention to file subsequently this Memorandum Decision explaining its reasoning. Although this Memorandum Decision filed later, it speaks as of August 14, 2003.

3. The Casners' initial plan, filed February 1, 2001 listed pre-filing arrearages of $12,990.00. Their amended plan, filed March 1, 2001, listed pre-filing arrearages of

$12,095.13. The latter figure was apparently based on the Chase proof of claim filed February 20, 2001, which asserted a total claim of $149,432.02 and listed pre-filing arrearages of $12,095.13. Chase subsequently filed two amendments of its claim. On September 4, 2001, Chase filed an amendment asserting a total claim of $150,098.02 and pre-filing arrearages of $12,770.13. On August 26, 2002, Chase filed an amendment asserting a total claim of $150,773.02 and pre-filing arrearages of $13,445.13.

the Casners to make all post-petition payments directly to Chase as they came due. Pre-petition arrearages were to be paid by the Chapter 13 trustee through the plan.

On April 14, 2001, Chrysler Financial Company, LLC ("Chrysler") filed a motion for relief from automatic stay. Chrysler was the holder of a secured claim that was not in default when the case was filed. The confirmed plan required the Casners to make all post-petition payments directly to Chrysler as they came due. Chrysler's motion for relief from automatic stay alleged that the Casners had defaulted under the confirmed plan by failing to make the March and April, 2001 post-petition direct payments to Chrysler. The Chrysler motion for relief from automatic stay was resolved by court-approved stipulation. The Casners agreed to make all future post-petition payments to Chrysler in a timely fashion and to pay an additional sum each month to cure the post-petition delinquency.

On July 30, 2001, Chase filed a motion for relief from automatic stay. Chase alleged that the Casners had defaulted under the confirmed plan by failing to make the June and July, 2001 post-petition direct payments to Chase. The Casners opposed the Chase motion, claiming that a job injury had caused Mr. Casner to miss three and one-half months of work and that he encountered administrative disruptions in the re-commencement of his pay after his return to work, all of which caused the delinquency. The Casners asserted that they had cured the post-petition delinquency to Chase by August 2, 2001 and were current as of August 28, 2001, the date of the hearing on the Chase motion. Because the Casners had cured the post-petition default before the hearing on the Chase motion, the court denied the Chase motion.

On August 3, 2001, Chrysler filed a second motion for relief from automatic stay. The second Chrysler motion recited the earlier stipulation and alleged that the Casners were again delinquent on post-petition direct payments to Chrysler. The Casners opposed the second Chrysler motion on the same grounds they asserted in response to the first Chase motion. They alleged that they had cured the arrearage to Chrysler as of July 23, 2001 and that they were post-petition current with Chrysler as of August 28, 2001, the date of the hearing on the second Chrysler motion. At the request of the parties, the court continued the second Chrysler motion so that Chrysler could verify receipt of the cure payments. At the continued hearing, because the Casners were post-petition current to Chrysler, the court denied the second Chrysler motion.

On April 24, 2002, Chrysler filed a third motion for relief from automatic stay. The third Chrysler motion recited the earlier stipulation and alleged that the Casners were again delinquent on post-petition direct payments to Chrysler. The Casners did not oppose the third Chrysler motion. On May 14, 2002, the court modified the automatic stay to allow Chrysler to repossess and dispose of its collateral and to apply the proceeds to its secured claim.

On May 2, 2002, Chase filed a second motion for relief from automatic stay. Chase alleged that the Casners had defaulted under the confirmed plan by failing to make post-petition direct payments to Chase. The Casners opposed the second Chase motion. They alleged that Mrs. Casner had been ill and unable to work for a period of time, that she had requested an advance on her medical leave, that her receipt of the advance was delayed by her employer's failure to submit the proper paperwork, that they missed one payment to Chase as a result, that Chase refused to

accept another payment by electronic transfer, that they tendered one payment by cashier's check on May 13, 2002, that they would tender another payment by May 24, 2002, that according to the second Chase motion they had $48,144.49 in equity in the Real Property [4] and that they could cure the final missing payment in four equal monthly instalments (each in addition to the regular post-petition payment) commencing in July, 2002.

At the hearing on the second Chase motion, the court conditioned continuation of the automatic stay. The court ordered that the automatic stay would remain in effect if the Casners (1) paid the June through October, 2002 mortgage payments so that each was received by Chase within the grace period, if any, (2) paid a minimum of an additional $387.89 with each timely regular payment, (3) became completely post-petition current in mortgage payments, including any associated late fees, by October 15, 2002 and (4) paid the June through October, 2002 Chapter 13 plan payments to the trustee in a timely manner. The court also ordered that the motion could be restored to calendar not more than once should the Casners default in post-petition direct mortgage payments to Chase during the period November 1, 2002 through May 31, 2003.

After the June 4, 2002 hearing, the Casners apparently paid the one missing payment. On or about July 24, 2002, Chase and the Casners submitted a Stipulated Order Re Adequate Protection (the "Stipulated Order"). The Stipulated Order made no mention of the previously missing payment. It required the Casners to make timely post-petition mortgage payments to Chase, commencing with the July, 2002 payment and continuing for the duration of

the plan. As was the case with the court's ruling, the Stipulated Order provided that if the Casners failed to make timely payment, Chase could submit a declaration of default and proposed order terminating the automatic stay as to enforcement of Chase's deed of trust on the Real Property. The only relevant opposition to such a declaration would be the Casners' contention that the claimed default had not occurred.

The court vacated the June 4, 2002 ruling and entered the Stipulated Order on July 25, 2002.

On May 2, 2003, Chase filed a declaration stating that the Casners had failed to pay three direct post-petition mortgage payments. Chase also filed a proof of service showing that the declaration of default under the Stipulated Order had been properly served on the Casners and their counsel.

The Casners did not contest the declaration of default, and on June 19, 2003, the court entered the Order Granting Relief From Stay. This adversary proceeding followed on July 25, 2003.

## ANALYSIS

The Complaint constitutes an action under 11 U.S.C. § 105(a) for a temporary injunction to allow the Casners to complete successfully their financial rehabilitation in Chapter 13. The Application seeks a preliminary injunction pending a final determination of the Casners' right to a temporary injunction.

### The Merits Of The Complaint

■ A preliminary injunction is a provisional remedy. "It is the function of a preliminary injunction to preserve the sta-

---

4. Chase accepted the Casners' scheduled value of $200,000.00 for the Real Property and alleged a debt of $151,985.49, including principal, interest, late charges, attorneys' fees, inspection fees and foreclosure fees and costs.

tus quo pending a determination of the action on the merits." *King v. Saddleback Junior Coll. Dist.*, 425 F.2d 426, 427 (9th Cir.1970) (citation omitted). The standards for issuing a preliminary injunction are summarized in *Morgan–Busby v. Gladstone (In re Morgan–Busby)*, 272 B.R. 257, 261 (9th Cir. BAP 2002):

> The traditional criteria for a preliminary injunction are, "1) a strong likelihood of success on the merits, 2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, 3) a balance of hardships favoring the plaintiff, and 4) advancement of the public interest (in certain cases)." [Citation omitted]. Alternatively, a preliminary injunction may issue if the moving party demonstrates "(1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in its favor. [Citation omitted]."

The court in *Morgan–Busby* further explained that, in applying the alternative test:

> ... [T]he amount of irreparable harm and the probability of success on the merits are inversely related. "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases."

*Id.* (Citation omitted).

The "merits" always refer to some underlying substantive claim. In *Morgan–Busby*, for example, Chapter 11 debtors scheduled certain shares of stock as assets and claimed the shares exempt. The Chapter 11 trustee filed a complaint seeking a turnover of the shares to the estate. The trustee sought and obtained a temporary restraining order and a subsequent preliminary injunction preventing the debtors from disposing of the shares or interfering with the trustee's investigation of their value pending resolution of the turnover complaint. On the appeal of the order granting the preliminary injunction, the issue was whether the trustee was likely to prevail in the turnover action. The appellate court concluded that the trustee was likely to prevail in the turnover action, and therefore affirmed the order granting the preliminary injunction. *Id.* at 266.

Here, the "merits" are a bit more confusing. The underlying action seeks a temporary injunction under 11 U.S.C. § 105(a). That claim is deceptively similar to the request for the preliminary injunction itself; however, the two are distinct.

■ Bankruptcy courts have the power to grant injunctive relief under 11 U.S.C. § 105(a), which states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Section 105(a) enables a bankruptcy court in appropriate circumstances to enjoin actions not covered by the automatic stay and actions that are excepted from the automatic stay:[5]

> The section 362(b) exceptions to the automatic stay prevent the imposition of a stay *automatically* upon the commencement of the case. They do not, however, prevent the bankruptcy court from enjoining actions protected by the

---

5. Reported decisions differ on whether a bankruptcy court can reimpose the automatic stay after it has been terminated by operation of 11 U.S.C. § 362(e). See, *Wedgewood Inv. Fund, Ltd. v. Wedgewood Realty Group, Ltd. (In re Wedgewood Realty Group, Ltd.)*, 878 F.2d 693, 699–702 (3rd Cir.1989). However, under Ninth Circuit law, bankruptcy courts lack authority to reinstate the automatic stay. *Canter v. Canter (In re Canter)*, 299 F.3d 1150, 1155 n. 1 (9th Cir.2002); *In re Flores*, 293 B.R. 251, 253 (Bankr.E.D.Cal.2003).

exceptions in appropriate circumstances. The court's power is generally based upon section 105 of the Code. The court has ample power to enjoin actions excepted from the automatic stay if the actions would interfere with the rehabilitative process, whether in a liquidation or reorganization case. For example, an action by a governmental unit seeking to enforce its regulatory power is not automatically stayed because it is excepted by section 362(b)(4). Nevertheless, the governmental unit may be enjoined by the court if exercise of its regulatory power would unduly hinder the rehabilitative process and alternative means of protecting the government's interest are available.

In effect, by excepting particular acts or actions from the stay, Congress has shifted the burden of seeking relief to the party seeking the protection against those acts. An injunction may be issued, but only under the normal standards for injunctive relief.

3 COLLIER ON BANKRUPTCY ¶ 362.05 (15th Ed. Rev.2002)(emphasis in original). *See also, United States v. Commonwealth Cos., Inc. (In re Commonwealth Cos., Inc.)*, 913 F.2d 518, 527 (8th Cir.1990).

In the Chapter 11 context, many courts have granted temporary injunctive relief under Section 105(a) to prevent actions against non-debtor parties that would detrimentally affect the bankruptcy estate or would impair the debtor's opportunity to reorganize. Well known among such cases is *Johns–Manville Corp. v. The Asbestos Litig. Group (In re Johns–Manville Corp.)*, 26 B.R. 420 (Bankr.S.D.N.Y.1983), *aff'd*, 40 B.R. 219 (S.D.N.Y.1984), *rev'd in part*, 41 B.R. 926 (S.D.N.Y.1984). In *Johns–Manville*, the bankruptcy court did several things. First, it temporarily stayed all suits and discovery requests pursued against or directed to certain key officers, directors, employees and agents. The court found that continuation of actions against the specified people would "directly interfere with the debtor's estate and/or with its chances for a successful reorganization." *Johns–Manville*, 26 B.R. at 426. It further found that the staying of discovery against the debtor would not be effective unless discovery was also stayed against the specified people. *Id.* It summarized the situation as follows:

> The massive drain on these individuals' time and energy at this crucial hour of plan formulation in either defending themselves or in responding to discovery requests could frustrate if not doom their vital efforts at formulating a fair and equitable plan of reorganization.

*Id.*

Based on the foregoing findings, the bankruptcy court temporarily stayed suits and discovery against the specified individuals from January 10, 1983 to March 1, 1983, a period of about 49 days that roughly corresponded to the debtor's remaining period of plan filing exclusivity under 11 U.S.C. § 1121(b). *Id.* at 424.

Second, the bankruptcy court indefinitely enjoined certain securities class action litigation brought against Manville employees, agents and others. The court found (1) that this litigation was a circumvention of the automatic stay, *i.e.*, that the subject conduct would frustrate the statutory scheme of Chapter 11 (*Id.* at 428), (2) that judgment in the litigation would have serious and adverse consequences for the debtor's estate (*Id.* at 429) and (3) that Manville would be required to participate, thus draining resources and adversely affecting Manville's ability to formulate a plan of reorganization (*Id.* at 430).

Third, on rehearing, the Bankruptcy Court indefinitely stayed actions against Manville's insurers. The court found (1) that allowing such actions to continue

would adversely affect the estate by diminishing the value of its insurance policies and (2) that Manville would be required to participate, thus draining resources and adversely affecting Manville's ability to formulate a plan of reorganization. *Id.* at 435–37.

The bankruptcy court decision in *Johns–Manville* stands for the proposition that:

> Pursuant to § 105(a), the Bankruptcy Court may extend the automatic stay under § 362 of the Code to stay and enjoin proceedings or acts against non-debtors where such actions would interfere with, deplete or adversely affect property of ... [the debtors'] estates or which would frustrate the statutory scheme of chapter 11 or diminish ... [the debtors'] ability to formulate a plan of reorganization ...

*Id.* at 436.

Several appeals were taken from the Bankruptcy Court's ruling. In *In re Johns–Manville*, 40 B.R. 219 (S.D.N.Y. 1984), District Judge Brieant affirmed the Bankruptcy Court on an appeal taken by a Manville co-defendant. The District Court pointed out that the injunctive power exercised by the Bankruptcy Court under Section 105 must be exercised in aid of some other section of the Bankruptcy Code, or to achieve the goals of the Bankruptcy Code:

> While § 105 vests the Bankruptcy Court with authority to extend the stay, such an extension must be in aid of authority exercised by the court pursuant to some other provision of the Code, in this case, § 362. In order to issue a stay under § 105, the court must determine that

such relief is at least appropriate to achieve the goals of a Chapter 11 reorganization, and is necessary to protect the debtor.

*Johns–Manville*, 40 B.R. at 225.

The District Court also stated that Section 105 injunctions of the kind under review are temporary:

> This Court recognizes, as does the Bankruptcy Court, that stays of proceedings of the sort present here, are not intended to be permanent. They must be reasonable as to scope and duration....
>
> Notwithstanding any impressions to the contrary, neither the reorganization proceedings nor the stay can last forever.

*Id.*

The District Court affirmed "without prejudice to future application(s) for complete or partial relief from the stays imposed pursuant to § 362 of the Bankruptcy Code and the Bankruptcy Court's prior orders, based on the circumstances and the equities of the case as they may then exist." *Id.* at 231.

In *In re Johns–Manville*, 41 B.R. 926 (S.D.N.Y.1984), District Judge Haight reversed the Bankruptcy Court on an appeal by another Manville co-defendant. The reversal was based on the perceived equities of the case, not on the Bankruptcy Court's lack of authority to issue a stay of the kind that it had issued. 41 B.R. at 931–33.

Other decisions in Chapter 11 cases have reached similar conclusions and have granted injunctions under 11 U.S.C. § 105(a) to protect non-debtor parties.[6]

---

**6.** Some court's hold that the power to "extend the stay" under Section 105 is not applicable in Chapter 7 because there is no reorganization to protect. *See, e.g., Gray v. Hirsch,* 230 B.R. 239, 243–44 (S.D.N.Y.1999). Other cases do not impose such a limitation. *See, e.g., Whitaker v. Interstate Commerce Comm'n (In re Olympia Holding Corp.),* 161 B.R. 524 (M.D.Fla.1993)(affirming in part and reversing in part the issuance of a preliminary in-

*See, e.g., Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.),* 21 B.R. 777 (Bankr.D.N.M.1982), *aff'd,* 25 B.R. 1018 (D.N.M.1982)(enjoining indefinitely a creditor's actions against the debtor's president and shareholder who guaranteed the debtor's obligation); *In re Arrow Huss, Inc.,* 51 B.R. 853 (Bankr. D.Utah 1985)(granting the debtor's unopposed request for a 45–day stay preventing credit card companies from pursuing several of the debtor's officers and employees to collect debts incurred by said officers and employees on behalf of the debtor and discussing prior cases on this issue); *A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.),* 788 F.2d 994 (4th Cir.1986), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986)(affirming a district court order enjoining indefinitely product liability litigation against the debtor and co-defendants); and *In re United Health Care Org.,* 210 B.R. 228 (S.D.N.Y.1997)(declining to grant an exemption to its previously issued preliminary injunction against prosecution of claims against third parties where such prosecution would foreclose a source of funding for the debtor). Other cases have recognized the court's authority to issue such injunctions in appropriate circumstances, but have declined to issue an injunction, or reversed the bankruptcy court's exercise of its authority to issue an injunction, based on the facts of the case. *See, e.g., Costa and Head Land Co. v. Nat'l Bank of Commerce (In re Costa and Head Land Co.),* 68 B.R. 296 (N.D.Ala.1986)(vacating a bankruptcy court order granting a preliminary injunction enjoining a bank from selling, transferring or otherwise disposing of securities pledged by non-debtor general partners of the debtor because the evidence did not support the bankruptcy court's findings on the elements necessary for a preliminary injunction); *Millard v. Developmental Disabilities Inst.,* 266 B.R. 42 (E.D.N.Y.2001)(declining to extend the automatic stay to non-debtor defendants where the debtor's reorganization was not so complex as to require an inordinate amount of non-debtor defendants' time).

The case law in the area establishes no uniform standard for the merits of a claim for temporary injunctive relief under Section 105(a) in the Chapter 11 context. The court gleans the following from the case law as relevant factors for consideration: [7]

1. Will the threatened actions interfere with, deplete or adversely affect property of the bankruptcy estate?

2. Will the threatened actions frustrate the statutory bankruptcy scheme?

3. Will the threatened actions interfere with the bankruptcy rehabilitative process?

4. If one or more of the foregoing effects is/are present, is the requested stay reasonable as to scope and duration?

5. If one or more of the foregoing effects is/are present, are appropriate means

junction in favor of a Chapter 7 trustee); *Archambault v. Hershman (In re Archambault),* 174 B.R. 923 (Bankr.W.D.Mich.1994)(granting a preliminary injunction in an individual Chapter 7 case to protect a non-debtor); and *Ochs v. Lipson (In re First Cent. Fin. Corp.),* 238 B.R. 9 (Bankr.E.D.N.Y.1999)(declining to enjoin claims against a Chapter 7 debtor's director and officer liability policy where the court concluded that the policy proceeds were not property of the estate).

7. Equitable defenses are relevant to a request for a preliminary injunction. 13 MOORE'S FEDERAL PRACTICE, §§ 65.03 and 65.06[5] (3rd Ed.2003); *GoTo.Com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1209–10 (9th Cir.2000). In this instance, however, Chase asserted no equitable defenses.

available to protect the non-debtor party's interests?

■ The court has authority to issue injunctions under 11 U.S.C. § 105(a) in Chapter 13 cases. 11 U.S.C. § 103(a); *Canter*, 299 F.3d at 1155. In considering the likelihood of success on the merits of a request for a temporary injunction in a Chapter 13 case, the court will apply the above-summarized factors developed in the Chapter 11 context.

## The Request For A Preliminary Injunction

The Casners are entitled to a preliminary injunction under either the traditional or the alternative test. Applying the traditional test, the court first reviews likelihood of success on the merits of the Casners' request for a temporary injunction.

### Likelihood of Success on the Merits.

■ Based on the evidence before the court on the Application, the Casners are likely to prevail on the merits of the Complaint's claim for a temporary injunction. Foreclosure by Chase will extinguish the Casners' interest in the Real Property, their residence, which is property of their bankruptcy estate.[8] In addition, the Casners' experience in this Chapter 13 case shows their inability to make consistently all of their direct payments on secured claims and their Chapter 13 plan payments. Chrysler made three motions for relief from automatic stay, and the court ultimately modified the automatic stay to allow Chrysler to repossess and foreclose. Chase made two motions for relief from automatic stay. After the Casners defaulted under a stipulated adequate protection order flowing from the second Chase motion, the court modified the automatic

stay to allow Chase to foreclose. It is clear that the Casners can successfully complete a financial rehabilitation in this case only if they sell or refinance the Real Property to complete their plan. Thus, foreclosure will deplete property of the bankruptcy estate and interfere with the rehabilitative process.

The facts disclosed in the Application and the Chase motions for relief from automatic stay show that the value of the Real Property exceeds the Chase claim by $50,000.00, or more. The Complaint seeks a temporary stay of foreclosure for sufficient time to permit the refinancing escrow to close and to permit the Casners to seek modification of their Chapter 13 plan. Given the apparent excess value in the Real Property over the amount of the Chase claim, a stay of some short duration, e.g., 60 to 90 days, would not ultimately prejudice Chase's ability to obtain full payment from the Real Property. Furthermore, nothing in the court's ruling prevents Chase from seeking dissolution of the preliminary injunction or any subsequent temporary injunction based on changed circumstances. Thus, a temporary stay of the duration mentioned above would be reasonable in scope and duration and Chase's interests would be protected.

The court finds that the Casners are likely to prevail on the merits of their request in the Complaint for a temporary injunction.

### Irreparable Injury.

The Casners will suffer irreparable harm if a preliminary injunction is denied. In that event, the Casners will lose their interest in Real Property, their residence, including the excess value described above.

---

**8.** The Casners' confirmed Chapter 13 plan states that property of the estate will not revest in the debtors until a discharge is granted. Thus, the Real Property is property of the bankruptcy estate notwithstanding 11 U.S.C. § 1327(b).

**Balance of the Hardships.**

The balance of the hardships tips in the Casners' favor. The Casners are faced with loss of their residence and the "equity" therein. Chase is an institutional lender that will ultimately be paid its principal, interest and allowable costs, even if a preliminary injunction is granted.

**Public Policy.**

Public policy is not offended by granting a preliminary injunction. Granting injunctive relief to allow the Casners an opportunity to complete the refinancing and modify their plan is the only method by which the rehabilitative purposes of Chapter 13 [9] can be effectuated in this case.

Having established entitlement to a preliminary injunction under the primary test, the Casners have, *a fortiori,* established entitlement to such relief under the alternative test.

## CONCLUSION

For the foregoing reasons, the Court will issue a preliminary injunction to prevent foreclosure on the Real Property by Chase pending entry of judgment after trial on the Complaint. The court will also accelerate the status conference in this adversary proceeding with the intention of establishing an accelerated schedule for discovery and trial. A separate order will issue.

9. *See* 8 COLLIER ON BANKRUPTCY ¶ 1300.02 (15th Ed. Rev.2002).