In re EZ PAY SERVICES, INC., a/k/a EZ Pay Health Care, a/k/a EZ Pay Dental, a/k/a EZ Pay Medical, Debtor.

Robert Altman, as Chapter 7 Trustee, Plaintiff,

v.

Davis & Dingle Family Dentistry, Defendant.

Bankruptcy No. 3:06–bk–2474–PMG.

Adversary No. 3:07–ap–146–PMG.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 11, 2007.

Jason B. Burnett, Kenneth B. Jacobs Gray, Robinson, P.A., Jacksonville, FL, for Plaintiff.

George B. Cauthen, Nelson Mullins Riley & Scarborough LLP, Columbia, SC, for Defendant.

Roy S. Kobert, Orlando, FL, for Intervenor.

### ORDER ON MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing on August 24, 2007, to consider the Motion for Preliminary and Permanent

Injunction filed by the Plaintiff, Robert Altman, as Chapter 7 Trustee (the Trustee).

Generally, the Trustee seeks the entry of an Order enjoining Davis and Dingle Dentistry, P.A. (Davis & Dingle) from prosecuting a State Court action in South Carolina against eight non-debtor defendants. The Trustee seeks such injunctive relief pursuant to § 105(a), § 541(a)($l$), § 541(a)(6), and § 542(b) of the Bankruptcy Code, and Rule 7056 of the Federal Rules of Bankruptcy Procedure.

### Background

Davis & Dingle operates a dental office and provides dental services to patients in Columbia, South Carolina.

The Debtor, EZ Pay Services, Inc., was engaged in the business of contracting with health care providers to acquire the right to collect certain of the providers' patient accounts, in exchange for discount fees and other fees specified in the contracts.

In June of 2004, the Debtor and Davis & Dingle, as the "client," entered into an agreement entitled "E–Z Pay Services, Inc Doctor Client Contract." (Davis & Dingle's Exhibit 1). According to its terms, the Contract was "based on a month-to-month service agreement" relating to Davis & Dingle's enrolled patient accounts. The Contract further provided:

> The client is hereby assigning selected patient accounts, as individually authorized by the client's patients, to E–Z Pay Services, Inc. for the purpose of collecting patient balances due to the client. Once assigned, the collectable balance of the patient account becomes the property of E–Z Pay Services, Inc.

(Davis & Dingle's Exhibit 1, ¶ 2.4). Additionally, the Contract provided that Davis & Dingle would be "charged a 6% discount fee on all proceeds paid to the client by E–Z Pay Dental, resulting in net payment to the client of 94%." (Davis & Dingle's Exhibit 1, ¶ 1.6). The "net payment" was to be disbursed to Davis & Dingle on the fifteenth day of each month, from collections received in the previous month. (Davis & Dingle's Exhibit 1, ¶ 2.2).

In June of 2005, one year after the execution of the Davis & Dingle Contract, the Debtor, as Seller, entered into a Purchase Agreement with Alternative Debt Portfolios, L.P. (ADP). (Trustee's Exhibit 2). Pursuant to the Purchase Agreement, the Debtor agreed to sell certain of its Contracts to ADP. The Purchase Agreement provided in part:

> 1. The Seller may sell to, or have the Company [ADP] bill or advance on, hereinafter referred to as "Assign" certain Contracts, Conditional Sales Contracts, Retail Installment Contracts, E–Z Pay Dental Enrollment Forms, Chattel, Installment Notes, Promissory Notes, Security Agreements, Invoices, Accounts Receivables, Leases or other obligations hereinafter referred to as "Contracts" arising out of the sale of merchandise or services sold or delivered by the Seller....

> 2. For each Contract purchased by, or assigned to, the Company, the Company shall be due all payments from Contract Obligor. The Company shall determine the amount of advance required to purchase each Contract and a separate addendum shall specify the purchase price due to the Seller.

> 3. Contracts sold or assigned to the Company by the Seller shall become the sole property of the Company and the Seller waives all rights to said Contracts. Funds delivered by the company shall constitute payment in full for the Seller's interest in Contracts sold or assigned....

(Trustee's Exhibit 2). On June 29, 2005, the Debtor executed a separate Provider Payment Guarantee, pursuant to which it agreed to "continue forwarding all payments due to Medical Providers and/or to settle balance in full with all Medical Providers as per the terms of the E–Z Pay Medical Provider Agreements." (Trustee's Exhibit 2).

Beginning in June of 2006, the Debtor failed to disburse the monthly "net payment" due to Davis & Dingle pursuant to Davis & Dingle's Client Contract with the Debtor.

On August 4, 2006, Davis & Dingle filed an action in the State Court in South Carolina (the State Court action) to recover the payments owed to it on its patient accounts. In the State Court action, Davis & Dingle originally sued eleven defendants, including the Debtor and ADP, for breach of contract and conversion.

On the same day that Davis & Dingle commenced the State Court action in South Carolina, an involuntary Chapter 11 petition was filed against the Debtor in Nevada.

On August 15, 2006, ADP removed the State Court action to the Bankruptcy Court for the District of South Carolina.

On August 16, 2006, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the Middle District of Florida.

Davis & Dingle subsequently filed a Motion in the Bankruptcy Court in South Carolina to remand the State Court action to the Richland County Court of Common Pleas.

On November 2, 2006, the Bankruptcy Court for the District of South Carolina entered an Order on Davis & Dingle's Motion to Remand, and remanded the removed action to the State Court. (Davis & Dingle's Exhibit 3). In the Order of Remand to State Court, the Bankruptcy Court found that the "state court litigation could have some impact upon the handling or administration of the bankruptcy estate," and that the Bankruptcy Court therefore had "related to" jurisdiction under § 1334(b) of title 28. The Bankruptcy Court also determined, however, that remand to the State Court was appropriate under 28 U.S.C. § 1452(b), because Davis & Dingle had agreed to dismiss the Debtor from the action, because the issues raised in the action involved matters of state law, and because the parties possessed a right to a jury trial, among other factors. Consequently, the Court remanded the proceeding to the State Court, on the express condition that Davis & Dingle dismiss the Debtor from the action within twenty days from the date of the Order.

On November 26, 2006, Davis & Dingle filed an Amended Complaint in the State Court action. (Trustee's Exhibit 3). The Amended Complaint does not name the Debtor as a party to the action. The non-Debtors named as defendants in the Amended Complaint include ADP and certain of ADP's principals.

The Amended Complaint contains three Counts. In Count I, for Civil Conspiracy, Davis & Dingle alleges that ADP and the other defendants conspired to harm Davis & Dingle by retaining its "94% ownership of the South Carolina accounts." In Count II, for Conversion, Davis & Dingle alleges that ADP and the other defendants have continued to collect money from Davis & Dingle's accounts, and refused to remit the money to Davis & Dingle. In Count III, for Unfair Trade Practices, Davis & Dingle alleges that ADP and the other defendants have engaged in unfair and deceptive acts by billing and collecting fees legally owed to Davis & Dingle. Finally, Davis & Dingle alleges that it has suffered damages

that exceed $425,221.75 as a result of lost revenues, lost business, and lost clients.

On December 20, 2006, Davis & Dingle filed a Proof of Claim in the Debtor's bankruptcy case. (Trustee's Exhibit 4). The Proof of Claim, which was assigned Claim Number 270, was filed as an unsecured claim in the amount of $418,966.46. Two exhibits are attached to the Claim: (1) a list of the receivables owed by Davis & Dingle's patients, and (2) the E–Z Pay Services, Inc. Doctor Client Contract with Davis & Dingle. In a "Summary of Claim and Documents" submitted with the Proof of Claim, Davis & Dingle "asserts ownership rights in the accounts" superior to any security interest claimed in the receivables.

On May 29, 2007, approximately five months after the Proof of Claim was filed, the State Court in South Carolina entered an Order on various motions that had been filed by ADP and the other defendants in the State Court action. (Davis & Dingle's Exhibit 4). ADP had filed a Motion to Dismiss the State Court action, for example, based on Davis & Dingle's failure to join the Debtor as an indispensable party, among other grounds. The State Court declined to find that the Debtor was either a necessary or an indispensable party to the action, and denied the Motion to Dismiss without prejudice to ADP's right to "revisit these issues after discovery is complete."

On June 28, 2007, the Trustee commenced the adversary proceeding that is currently before the Court. In his Complaint and Motion for Preliminary and Permanent Injunction, the Trustee seeks the entry of an Order enjoining Davis & Dingle from prosecuting the State Court action. Essentially, the Trustee alleges as follows:

23. As previously referenced, the Davis & Dingle action is one of approximately fourteen (14) lawsuits commenced nationwide involving Healthcare Providers' attempts to assert claims to the Patient Contracts or their income stream, which the Chapter 7 Trustee asserts is property of the Debtor's bankruptcy estate. . . .

. . .

26. If the Davis & Dingle action is allowed to proceed, it will irreparably harm the Estate and the Trustee's ability to prosecute the Trustee's Lawsuit because legal determinations may be made that impact estate property and could potentially have the effect of constituting collateral estoppel. Specifically, the court in South Carolina may make disparate rulings regarding the ownership of the Patient Contracts which will interfere with this Court's ability to adjudicate the very same issue in the Trustee's Lawsuit.

(Doc. 1, ¶¶ 23, 26). The "Trustee's Lawsuit," as referenced in the Complaint, consists of a nine-count action initiated by the Trustee against ADP. (Adv.Pro.07–19). In the "Trustee's Lawsuit," the Trustee challenges the Debtor's sale of the Provider Contracts to ADP, and seeks to recover the Contracts for the benefit of the estate.

In response to the request for injunctive relief, Davis & Dingle contends that its State Court action involves only non-Debtor third parties, and that injunctions against such non-Debtor litigation are not generally granted. Additionally, Davis & Dingle contends that the Trustee is not the owner of its patient accounts, and that Davis & Dingle's claims against ADP are independent of any claims that might be asserted by the Trustee. Finally, Davis & Dingle contends that a decision in the State Court action would not collaterally estop the Trustee from pursuing its own claims against ADP, because the Trustee

is neither a party to the State Court action nor in privity with a party. (Doc. 8).

## Discussion

The Trustee is seeking a preliminary and permanent injunction enjoining Davis & Dingle from continuing the State Court action. The Motion for Preliminary and Permanent Injunction is based on § 105 and § 541 of the Bankruptcy Code, and Rule 7065 of the Federal Rules of Bankruptcy Procedure.

■ Section 105(a) of the Bankruptcy Code provides in part:

**11 U.S.C. § 105. Power of court**

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. . . .

11 U.S.C. § 105(a). It is well-established that the power to issue "any order" under § 105(a) includes the power to enter injunctions that are necessary to carry out the provisions of the Bankruptcy Code. *In re Enivid,* 364 B.R. 139, 148 (Bankr. D.Mass.2007); *In re Casner,* 302 B.R. 695, 704 (Bankr.E.D.Cal.2003); Collier on Bankruptcy, 15th ed. rev., ¶ 105.02.

■ When seeking injunctive relief under § 105(a), however, the moving party must generally satisfy the traditional nonbankruptcy requirements for such relief under Rule 65 of the Federal Rules of Civil procedure. *In re Olympia Holding Corporation,* 161 B.R. 524, 528 (M.D.Fla.1993)(Injunctions under section 105 are granted only in accordance with the "usual rules" governing such relief); *In re Regency Realty Associates,* 179 B.R. 717, 720 (Bankr.M.D.Fla.1995); *In re 1600 Pasadena Offices. Limited,* 64 B.R. 192, 194 (Bankr.M.D.Fla., 1986).

■ In the Eleventh Circuit, it is generally held that four requirements must be satisfied as a condition to the entry of a preliminary injunction. Specifically, the moving party must show: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Four Seasons Hotels and Resorts. B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1210 (11th Cir.2003)(quoted in *In re Thomas,* 2007 WL 858414, at *2 (Bankr.N.D.Ala.2007)).

In this case, the Court finds that the Trustee has satisfied the requirements for the entry of a preliminary injunction, and that Davis & Dingle should be enjoined from pursuing the State Court action.

### A. Substantial likelihood of success on the merits

■ First, the Court finds that the Trustee is likely to succeed on the merits of his Complaint for injunctive relief. In the Complaint, the Trustee seeks to enjoin the continuation of the State Court action, essentially because "legal determinations may be made [in the State Court action] that impact estate property." (Doc. 1, ¶ 26).

By far, the most valuable asset claimed by the estate is its right to recover certain contract receivables from ADP and other parties. On the Debtor's Schedule of Assets, for example, it listed "bad debt collections" in the approximate amount of $4,669,188.46, contract receivables due from a collection agency in an unknown amount, and contract receivables due from ADP "estimated to be in excess of $20 million." (Main Case Doc. 31).

It is undisputed that the contract receivables scheduled by the Debtor relate to the patient accounts acquired by the Debtor pursuant to its contracts with numerous

medical providers. The contracts were generated in connection with the Debtor's business of "patient dental financing." (Main Case Doc. 32).

The contract between the Debtor and Davis & Dingle, as a medical provider, is entitled "E–Z Pay Services, Inc Doctor Client Contract." The Trustee contends that the patient accounts that are the subject of the Davis & Dingle Contract are property of the Debtor's estate. (Doc. 1, ¶ 23).

In response, Davis & Dingle contends that "the rights being asserted by Davis & Dingle in the State Court action never belonged to EZ Pay," and that the Trustee does not have title to its patient accounts. (Doc. 8, pp. 9–12). On the contrary, Davis & Dingle contends that it assigned only 6% of each patient account to the Debtor pursuant to the Client Contract, and that it retained its ownership interest in the remaining 94% due on each patient account In the Amended Complaint filed in the State Court action, for example, Davis & Dingle alleges that it "owns 94% of each of the South Carolina patient accounts that were assigned to" ADP and the other State Court defendants, that it "owned and was entitled to be paid 94% of the South Carolina patient accounts," and that "it owned the South Carolina patient accounts and that only 6% of each South Carolina patient account could be assigned to" the State Court defendants. (Trustee's Exhibit 3, Amended Complaint, ¶¶ 14–16).

The Court has reviewed the first four pages of the E–Z Pay Services, Inc Doctor Client Contract with Davis & Dingle. (Davis & Dingle's Exhibit 1). Paragraph 2.4 and paragraph 4.3 of the Contract provide, respectively:

### 2.4 Authorization & Assignment of Accounts

*The client is hereby assigning selected patient accounts,* as individually authorized by the client's patients, to E–Z PAY SERVICES, INC. for the purpose of collecting patient balances due to the client. *Once assigned, the collectable balance of the patient account becomes the property of E–Z PAY SERVICES, INC.* . . . .

. . .

### 4.3 Assignment of Patient Funds

Because E–Z PAY SERVICES, INC guarantees patient payments to the doctor without recourse, *all patient contracts are considered the property of E–Z PAY SERVICES, INC.* Should the patient make payment directly to the client for any financed account already assigned to E–Z Pay Dental, the client is required to notify E–Z PAY SERVICES, INC immediately. Payments made to E–Z Pay Dental are held as trust funds, until such time as they are disbursed to the client. Separate reserve trust funds are utilized for the purpose of paying the client on defaulted accounts. *By signing this contract the client acknowledges his understanding that each account assigned to E–Z Pay Dental is also legally assigned under state and federal laws of assignment.*

(Emphasis supplied). Additionally, other paragraphs in the Contract refer to accounts "conveyed" to the Debtor and accounts "assigned" to the Debtor, and to the prohibition against Davis & Dingle's acceptance of payment, other than payment in full, "on behalf of a patient who has been assigned to E–Z Pay Dental." (Davis & Dingle's Exhibit 1, ¶¶ 1.8, 4.4).

The Court does not determine in this proceeding whether the Contract constitutes an assignment of the enrolled patient accounts, or an agreement for collection services. As set forth above, however, the Contract specifically includes several pro-

visions which appear to create an assignment of Davis & Dingle's patient accounts to the Debtor. Although the Contract gives Davis & Dingle the right to receive 94% of the amount owed on each patient account—from the Debtor—the Contract does not appear to support Davis & Dingle's assertion that it retained an actual ownership interest in the underlying accounts.

The Debtor subsequently sold certain of its contracts to ADP pursuant to a Purchase Agreement dated June 22, 2005. (Trustee's Exhibit 2). Davis & Dingle acknowledges that its Contract with the Debtor was included in the Debtor's transaction with ADP. (Trustee's Exhibit 3, Amended Complaint, ¶ 15). The Trustee contends that the Debtor's sale of the contracts to ADP is voidable, and that the contracts (including the Davis & Dingle Contract) should be recovered as property of the estate. (Adv.Pro.07–19).

Based on the specific assignment language contained in the Debtor's Contract with Davis & Dingle, it appears that the Trustee has a valid claim that Davis & Dingle's patient accounts were property of the Debtor that should be pursued for the benefit of the estate. For purposes of the Motion for Preliminary Injunction, therefore, the Court determines that the Trustee has a substantial likelihood of success on the merits of its Complaint for the entry of an Order enjoining Davis & Dingle from pursuing the State Court action in South Carolina.

**B. Irreparable injury unless the injunction is entered**

■ Second, the Trustee contends that he will be irreparably injured unless the State Court action is enjoined, because legal determinations may be made in the State Court action that would affect his ability to collect property of the estate. (Doc. 1, p. 6).

It is clear that the patient accounts represent the primary property interest claimed by the Trustee for the benefit of the Debtor's estate. The Trustee's entitlement to the patient accounts is an overriding issue in the administration of the estate.

The Trustee is seeking a determination that he is entitled to the patient accounts in an adversary proceeding filed against ADP in the Bankruptcy Court. (Adv. Pro.07–19). In the adversary proceeding, the Trustee alleges that the Debtor's business involved the origination of financing contracts for the patients of dentists and other health care providers. (Adv.Pro.07–19, Doc. 1, ¶ 10). The Trustee further alleges that the Debtor's transaction with ADP in June of 2005 was not a true sale of the financing contracts to ADP, and that ADP misrepresented its intention regarding the Agreement. (Adv.Pro.07–19, Doc. 1, ¶ 16). Alternatively, the Trustee alleges that the Debtor's business practices constituted a Ponzi scheme, and that ADP participated and conspired in the scheme. (Adv.Pro.07–19, Doc. 1,¶25).

The Trustee's Complaint against ADP contains nine Counts, including an action to recover fraudulent transfers, an action for fraud, an action for conversion of accounts, and an action for turnover. To prevail on the Complaint, the Trustee must establish that the Debtor had initially acquired an interest in the patient financing contracts pursuant to its agreements with the medical providers, and that the contracts may be recovered from ADP because "all of the accounts of EZ Pay which were purportedly purchased by ADP were, in fact, not purchased by ADP." (Adv. Pro.07–19, Doc. 1, ¶ 66). Consequently, the Trustee seeks the entry of a Judgment avoiding the Debtor's transaction with

ADP, and requiring ADP to turn over to the Trustee "all EZ Pay accounts and all funds paid to ADP from EZ Pay Patient Contracts." (Adv.Pro.07–19, Doc. 1, p. 13). In other words, the Trustee is pursuing ADP in an effort to recover the primary asset of the bankruptcy estate.

Davis & Dingle is also pursuing ADP in the State Court action to recover some of the same patient accounts that the Trustee is pursuing. Davis & Dingle's Amended State Court Complaint contains three Counts: (1) an action for civil conspiracy; (2) an action for conversion; and (3) an action for unfair trade practices. (Trustee's Exhibit 3). In the Amended Complaint, Davis & Dingle alleges that the Debtor acquired only a 6% interest in its patient accounts by virtue of the E–Z Pay Doctor Client Contract, that ADP conspired with the Debtor to take control of the balance (94%) of the patient accounts, and that ADPs conduct in retaining the balance of the accounts (94%) constitutes a conversion of its property.

The issues involved in Davis & Dingle's State Court action clearly overlap the issues involved in the Trustee's adversary proceeding against ADP. Both proceedings, for example, require determinations regarding (1) the initial ownership of the patient accounts as between the medical providers and the Debtor, and (2) ADP's entitlement to retain the proceeds of the accounts pursuant to its Purchase Agreement with the Debtor.

Based on these considerations, the Court finds that the Trustee will suffer irreparable injury if Davis & Dingle is not enjoined from continuing the State Court action.

The Trustee is a party, either as plaintiff or defendant, in at least fourteen adversary proceedings involving medical providers who had entered into "doctor client contracts" with the Debtor. (Adv. Nos. 06–301, 06–334, 06–335, 06–355, 07–18, 07–52, 07–87, 07–120, 07–217, 07–218, 07–219, 07–220, 07–221, and 07–222). According to the Trustee, Davis & Dingle's State Court action is the only lawsuit brought by a medical provider that remains outside the Bankruptcy Court. (Transcript, August 24, 2007 hearing, p. 13).

Also according to the Trustee, the State Court action "could be in a faster track than we're on," with the result that a decision could be rendered in the State Court action before the providers' lawsuits and the Trustee's Lawsuit are resolved. (Transcript, August 24, 2007, hearing, p. 13). If Davis & Dingle successfully establishes in its State Court action that it retained ownership of 94% of each of its patient accounts after it entered the Doctor Client Contract with the Debtor, such a judicial determination could significantly affect all of the other litigation involving provider contracts that contain the same or substantially similar terms as the Davis & Dingle Contract.

On the other hand, if Davis & Dingle is unsuccessful on the second prong of its claim, and the State Court finds that ADP has not wrongfully converted the proceeds of Davis & Dingle's patient accounts, such a judicial determination could affect the Trustee's Lawsuit against ADP. A determination in ADP's favor in the State Court action on the conversion issue would necessarily involve the validity and enforceability of the Purchase Agreement between the Debtor and ADP, which is at the heart of the Trustee's Lawsuit against ADP. Since the Purchase Agreement between the Debtor and ADP covered numerous contracts with medical providers across the country, a determination in ADP's favor would have a substantial impact on the Trustee's total recovery for the estate.

The issues involved in Davis & Dingle's State Court action clearly overlap the issues involved in the Trustee's Lawsuit. Consequently, it appears that determinations may be made in the State Court action, if it is permitted to proceed, that could adversely affect the Trustee's recovery from ADP in the Trustee's Lawsuit. Under these circumstances, the Court finds that the Trustee will suffer irreparable injury if Davis & Dingle is not enjoined from prosecuting the State Court action.

## C. Balancing the injury to Davis & Dingle

■ The Court has found that the Trustee will suffer irreparable injury unless Davis & Dingle is enjoined from continuing the State Court action in South Carolina. The Court also finds that this threatened injury to the Trustee outweighs any potential injury that the entry of the injunction will cause to Davis & Dingle.

The Trustee seeks the entry of an Order enjoining Davis & Dingle from prosecuting the State Court action in South Carolina. The injunction, as requested, relates only to the State Court action. Davis & Dingle has, as mentioned, filed a claim in the Debtor's bankruptcy case for amounts it believes are due to it from the Debtor, and Davis & Dingle is not prohibited, of course, from asserting its claims against ADP in the Bankruptcy Court in which the Debtor's Chapter 7 case is being administered.

Davis & Dingle contends that it has engaged in extensive discovery in the State Court action, and that it is presently on the trial roster in South Carolina. (Transcript, August 24, 2007, hearing, p. 34; Davis & Dingle's Exhibit 5). Davis & Dingle also contends that it has requested a jury trial in the State Court action. If it is required to pursue its jury demand in the Bankruptcy Court, Davis & Dingle

contends, the proceeding would be bifurcated and final disposition of the case would be further delayed. (Transcript, August 24, 2007, hearing, pp. 35–36, 39).

The Court recognizes the importance of allowing parties to litigate in the forum of their choice, and the inconvenience to Davis & Dingle if it is required to pursue its claims in a state other than South Carolina. In this case, however, the Court finds that the injury to the estate caused by the continuation of the State Court action outweighs the injury to Davis & Dingle that will result if the State Court action is enjoined.

■ In reaching this decision, the Court is persuaded that a Chapter 7 Trustee's statutory responsibility to recover assets for the benefit of an estate may outweigh the harm suffered by an individual creditor who is required to pursue its claims through the bankruptcy process. The Seventh Circuit Court of Appeals applied this principle under similar circumstances in *Fisher v. Apostolou*, 155 F.3d 876 (7th Cir.1998). The Court recognizes, of course, that the Seventh Circuit does not require a strict showing of the four traditional requirements for injunctive relief prior to imposing an injunction under § 105 of the Bankruptcy Code. *Fisher v, Apostolou*, 155 F.3d at 882. Nevertheless, the Court is guided by the Seventh Circuit's premise that a Trustee's obligation to the estate is a significant factor to consider in balancing the relative harm to competing parties under § 105.

In *Fisher*, parties who had been injured by the debtor's fraudulent scheme sued certain of the debtor's non-debtor accomplices in a federal district court action. The trustee of the debtor's Chapter 7 estate sought to enjoin the district court action until he had finished pursuing his own claims against the accomplices. *Id.* at

878–79. In *Fisher,* as in the case at issue, the district court plaintiffs asserted that they should be permitted to continue the action, because their claims against the accomplices were independent of the trustee's claims. *Id.* at 879.

The Seventh Circuit allowed the preliminary injunction of the district court action pending the outcome of the trustee's proceeding against the accomplices. *Id.* at 883. The Seventh Circuit noted that the trustee was pursuing the accomplices "to maximize the debtors' estates for the benefit of their creditors," including the district court plaintiffs. *Id.* at 881. Consequently, to the extent that the district court plaintiffs were suing the same accomplices for claims that arose out of the same transactions as alleged in the trustee's claims, "they stand in exactly the same position as the rest of the aggrieved investors, pursuing identical resources for redress of identical, if individual, harms." *Id.*

The Seventh Circuit determined, therefore, that the district court plaintiffs "must wait their turn behind the trustee, who has the responsibility to recover assets for the estate on behalf of the creditors as a whole." *Id.* The Seventh Circuit based its determination, in part, on the Bankruptcy Court's authority to preliminarily enjoin lawsuits "to which the debtor need not be a party but which may affect the amount of property in the bankruptcy estate," and the allocation of that property among creditors. *Id.* at 882–83(quoting *Zerand–Bernal Group, Inc. v. Cox,* 23 F.3d 159, 161–62 (7th Cir.1994) and *In re Memorial Estates, Inc.,* 950 F.2d 1364, 1368 (7th Cir.1991)).

More recently, the Court in *Megliola v. Maxwell,* 293 B.R. 443, 446–49 (N.D.Ill. 2003) applied the same principles in granting a chapter 7 trustee's request to enjoin an action involving third parties, where the lawsuit would affect the orderly administration of the estate and the allocation of assets among creditors.

In this case, the Court acknowledges that enjoining Davis & Dingle's State Court action against ADP and the other defendants will impose a hardship on Davis & Dingle. The Trustee is also pursuing ADP, however, based on claims involving the same transactions as those asserted by Davis & Dingle in the State Court action. The Trustee's responsibility to the bankruptcy estate is a significant factor to consider in balancing the harm to Davis & Dingle against the harm to the Trustee under § 105 of the Bankruptcy Code. Since the Trustee's Lawsuit against ADP was commenced for the benefit of all creditors of the estate, the Court finds that the injury to the estate caused by the continuation of the State Court action outweighs the injury to Davis & Dingle that will result if the State Court action is enjoined.

### D. The public interest

■ This adversary proceeding involves a private dispute among contracting parties. Consequently, even though the Debtor's main Chapter 7 case involves numerous parties throughout the country, the Court finds that the issuance of the injunction will not be adverse to the public interest.

### Conclusion

The Trustee seeks the entry of an Order enjoining Davis & Dingle from prosecuting a State Court action in South Carolina against eight non-debtor defendants. Pursuant to § 105(a) of the Bankruptcy Code, such injunctive relief may be granted if the moving party satisfies the four requirements for the entry of an injunction under Rule 65 of the Federal Rules of Civil Procedure.

In this case, the Court finds that the Trustee has a substantial likelihood of success on the merits of its Complaint for injunctive relief, in view of the language in the Doctor Client Contract between the Debtor and Davis & Dingle evidencing the parties' intent to create an assignment of Davis & Dingle's patient accounts to the Debtor.

Second, the Court finds that the Trustee will suffer irreparable injury if the State Court action is not enjoined, since the issues involved in the State Court action overlap the issues involved in the Trustee's Lawsuit against ADP, with the result that determinations in the State Court action may adversely affect the Trustee's recovery of assets for the estate.

Third, the injury to the Trustee if the injunction is not entered outweighs the injury to Davis & Dingle that will be caused by the injunction. Davis & Dingle will no doubt be harmed by the entry of an order enjoining the prosecution of its claims against ADP in the State Court action. This harm is outweighed, however, in part by the Trustee's responsibility to obtain a maximum recovery for the estate by pursuing his own claims against ADP.

Finally, the entry of the injunction will not be adverse to the public interest.

Accordingly:

**IT IS ORDERED** that:

1. The Motion for Preliminary and Permanent Injunction filed by the Plaintiff, Robert Airman, as Chapter 7 Trustee, is granted as set forth in this Order.

2. The Defendant, Davis and Dingle Dentistry, P.A., is enjoined from proceeding with or prosecuting the action currently pending in the Court of Common Pleas, Fifth Judicial Circuit, State of South Carolina, County of Richland, styled *Davis & Dingle Family Dentistry v. Duvera Billing Services. L.L.C.; Alternative Debt Portfolios, L.L.C.; Alternative Debt Portfolios, L.P.; Lee Hovis;Eric Gangloff; Anders Hedqvist; Niels Anderson; and Scott Vertress,* Civil Action No.2006–CP–40–4429.

3. This injunction shall remain in effect until Davis & Dingle Dentistry, P.A., or any other party in interest, requests and obtains an Order from this Court that dissolves or otherwise modifies the terms of the injunction.